### JAMES T. CHAMBERLAIN v. W. SHOWALTER.

#### No. 76.

**1. Ancient Instrument—Forgery.**—Where a deed impeached has the recognized qualities of an ancient instrument, it prevails over the affidavit of forgery, and is admissible notwithstanding.

**2. What are Admissible as Ancient Instruments.**—The rule which now obtains to determine what are admissible as ancient instruments is, that the instrument should purport to be more than thirty years old, come from a proper custody, and be free from suspicion; acts of ownership over instrument are not necessary.

3. **Same — Proper Custody.**—In 1854, James Chamberlain transferred to Newton J. Chamberlain, Jr., his land certificate. Original transfer was by an order withdrawn from the General Land Office, and was before the court on trial of this case. There being no evidence as to when and how it came into the Land Office, that not being the proper place for it until certificate was located in 1874, *held*, did not come from proper custody.

4. **Same.**—Had the certificate come from hands of Newton J. Chamberlain, Jr., or been found among his effects, or been filed in Land Office by his heirs or representatives, it would come from the proper custody to give it the verity ascribed to an ancient instrument.

5. **Estoppel.**—To constitute an estate by estoppel, something more must be shown than mere knowledge by the owner of the existence of a forged title and delay in asserting his rights. Some affirmative act must be shown; as that he, by word or act, created the impression that the adverse title was valid, and thereby induced another to act; or knowing that another was about to acquire the apparent title in good faith, stood by and willfully suffered it to be consummated.

6. **Same.**—Where the law allows one a certain time in which to assert his right, although informed of adverse claim, his delay does not of itself bar his title.

7. **Limitation.**—A deed impeached as being a forgery, and its execution not proved, is admissible to support plea of five years limitation; not necessary for this plea that the deed should have conferred any title; simply required to have appearance of a valid deed.

APPEAL from Webb. Tried below before Hon. A. L. McLANE.

*Bethel Coopwood* and *A. Winslow*, for appellant.— 1. Defendant's plea of estoppel did not set up facts and circumstances sufficient in law to estop plaintiff, and should have been stricken out on demurrer; testimony on this point was incompetent and irrelevant. Williams v. Conger, 49 Texas, 601.

2. Laches in suing will not defeat an action, when adverse possession has not been long enough to support the plea of limitation; and plaintiff was not bound to give notice to the public that deeds under which adverse possession is held are forgeries, or prevent persons from purchasing under them; but defendant is chargeable with notice of the fraudulent character of his vendor's deeds, when patent is issued to plaintiff after the date of such deeds. Satterwhite v. Rosser, 61 Texas, 166; Mast v. Tibbles, 60 Texas, 301; Murphy v. Welder, 58 Texas, 235; Mass v. Berry, 53 Texas, 632; Williams v. Conger, 49 Texas, 582; Parker v. Baines, 65 Texas, 609.

3. The court erred in instructing the jury, that if any of the deeds under which defendants claim were a forgery, it would be inadmissible to support the statute of five years limitation. Adams v. Hayden, 60 Texas, 226; Porter v. Chronister, 58 Texas, 56; Medlin v. Wilkins, 60 Texas, 418; Castro v. Wurzbach, 13 Texas, 128; Winters v. Laird, 27 Texas, 618; Jones v. Powers, 65 Texas, 215; Cook v. Dennis, 61 Texas, 249.

*S. G. Newton*, for appellee.— 1. The plea of estoppel stated facts sufficient in law to bar appellant's right to the land in controversy. Bynum v. Preston, 69 Texas, 291; Shed v. Petty, 65 Texas, 495; Parker v. Spencer, 61 Texas, 155; Blum v. Merchant, 58 Texas, 400; 2 Pome. Eq. Jur., 805; Bige. on Estop., 484, 497; Lydeck v. Duran, 3 S. W. Rep., 264; Pickard v. Sears, 6 Ad. & E., 469; Gregg v. Wells, 10 Ad. & E., 98; Wendall v. Van Renssalaer, 1 Johns. Ch., 344; Guffey v. O'Reiley, 57 Am. Rep., 426; Anderson v. Hubble, 47 Am. Rep., 394.

As to ancient instruments: Holmes v. Coryell, 58 Texas, 277; Shum v. Hicks, 68 Texas, 277.

2. The charge of the court on five years limitation was correct. Rev. Stats., arts. 1316, 1317, 3193.

JAMES, CHIEF JUSTICE.—This was a suit in trespass to try title, filed March 20, 1886, by appellant, to recover a tract of 320 acres patented to James Chamberlain. The defenses consisted of the plea of not guilty, and the pleas of three, five, and ten years limitations. Defendant also pleaded, in substance, that in April, 1884, he became a purchaser of the land from the heirs of one Rafael Arispe, by warranty deed, alleging a valuable consideration paid them; that his grantors have since been insolvent. That at the time he so purchased the land they and their ancestor, Rafael Arispe, had been in possession of it since 1874, and that said heirs exhibited and delivered to him the patent to James Chamberlain, dated March 8, 1876; also a certified copy from the General Land Office, bearing date March, 1876, of a transfer of said certificate from James Chamberlain to Newton J. Chamberlain, Jr., of date March, 1854; also a certified copy from same office of a power of attorney, dated August 8, 1873, from Newton J. Chamberlain, Jr., to James R. Ham, authorizing sale of said certificate; also a certified copy from same office of a transfer of said certificate from Newton J. Chamberlain, Jr., by his attorney in fact, J. R. Ham, to Rafael Arispe; all of which, viz., the patent and said certified copies, had been filed for record and duly recorded at the end of March and beginning of April, 1876. That said instruments and the registration thereof showed a complete chain of title from the sovereignty of the soil to said Arispe. That there was nothing upon the face of said papers to indicate forgery or suspicion. That plaintiff knew of the existence and registration of said instruments, and knew that said land was liable to be sold to an innocent purchaser without notice of any fraud, yet took no steps to warn this defendant or any one else that such deeds were forgeries. That the defendant purchased from Arispe's heirs in good faith, without notice of plaintiff's claim, and that therefore plaintiff is estopped by his conduct to assert title to the land as against defendant. The cause was tried before a jury, resulting in a verdict for the defendant.

The defendant had in evidence no documentary title to the land in

question, unless the transfer of March 23, 1854, was properly admitted as an ancient instrument, and the other transfer duly proved.   An affidavit of forgery was made in reference to these instruments, the statutory effect of which was to require proof of their execution as at common law. Where a deed thus impeached is such as has the recognized qualities of an ancient instrument, it is held to prevail over the affidavit of forgery, and to be admissible notwithstanding it.

The early rule of determining what writings are thus admissible, and the one applied in this State until of late years, was, that the instrument should purport to be more than thirty years old, come from a proper custody, be free from suspicion, and supported by some evidence of the exercise of ownership under it.   Stroud v. Springfield, 28 Texas, 664; Holmes v. Coryell, 58 Texas, 688.

The rule which now obtains in this State dispenses with the necessity of showing acts of ownership in connection with the instrument.   Parker v. Chancellor, 73 Texas, 478; Ammons v. Dwyer, 78 Texas, 639; Crain v. Huntington, 81 Texas, 614.

This element of verification being dispensed with, there is left nothing to show in connection with a deed that appears genuine upon its face, and appears to be of the required age, save that it comes from the proper custody.   The original of this transfer was by an order withdrawn from the General Land Office, and was before the court.   It does not seem that there were any alterations upon its face or other defect in its appearance to cast suspicion upon it; but endorsed upon it in pencil was the word "forgery."

There is nothing in the evidence to show when the transfer was placed on file in the Land Office.   The certificate would not, through the ordinary and proper channels, have found its way there until its location, which the record shows did not occur until 1874.   That a transfer from the original grantee of the certificate would be filed in the Land Office any considerable time ahead of the certificate or its location would be an event so contrary to common experience in such matters that it can not reasonably be presumed.   The General Land Office is not a logical or proper depository for such instruments under such circumstances.   We find in the power of attorney to J. R. Ham, bearing date August, 1873, a recital that the certificate was then in the Land Office, also a recital that Chamberlain had sold him the certificate in 1854, but these recitals are not evidence.   The record is absolutely silent as to when the transfer made its appearance in the Land Office, and as to how it came there. Had there been a previous location of it, there would have been some reason for its presence in that office.   It devolved upon the plaintiff, in asking that the transfer be recognized as an ancient instrument, to offer some fact or circumstance showing how or when it came into the office,

or explanatory of its custody prior to the time it was known to be in the Land Office.

The transfer was without a single fact or circumstance corroborative of its existence between the years 1854 and 1874. Had there been a conflict in the evidence as to its custody during that period, the entire matter might then have been submitted with proper instructions to the jury; but there was not only no conflict on this question, but no evidence whatever. The word "forgery" written upon the instrument in pencil may or may not have been such suspicious circumstance as to destroy its admissibility as an ancient document; but we do not hesitate to say that the absence of all evidence as to the source from which it came to the General Land Office, and the silence of the facts as to its previous history, deprives it of a supporting circumstance, without which it can not be received as an ancient instrument.

It is not strictly correct to say that an ancient instrument proves itself. The presumptions that follow from the conditions that indicate its genuineness are allowed to take the place of the proof necessary at common law, and chief among these conditions has always been, and still is, the fact that it comes from a proper custody. To dispense with this requirement would be to push the rule beyond any known precedent, to throw down the last conservative barrier, and to allow every instrument regular upon its face and appearing to be over thirty years of age to be introduced without any evidence of its execution. We do not wish to be understood as saying that it is necessary for the evidence to trace step by step the custody of the instrument from its purported date; but that some fact or circumstance should appear to indicate that when the instrument is presented to the court it has come from the place or depository where it naturally would be found if genuine. Had the evidence shown that the transfer of 1854 had come from the hands of Newton J. Chamberlain, Jr., or been found among his effects, or had it been shown that it was filed in the Land Office by Newton J. Chamberlain or his heirs or representatives, this would have afforded a reasonable presumption that it had been in such custody since its date, and would have given it the verity ascribed to an ancient instrument. The evidence fails even to show that there was such a person as Newton J. Chamberlain, Jr., and there was no evidence offered to prove the execution of the deed as at common law.

The court, in the first and ninth paragraphs of the main charge, submitted the question of whether or not it was the deed of James Chamberlain. This was erroneous, in view of what is above stated, as there was no evidence to authorize the submission of such issue. The court should have assumed that the deed had not been executed.

Upon the questions raised in reference to the plea of estoppel, we are of the opinion that the plea was not sufficient. The view taken of this by

the district judge, and expressed in the ninth paragraph of the main charge, was correct. To constitute an estate by estoppel, something more must have been shown than mere knowledge by the owner of the existence of a forged title upon the records of the county wherein the land was situated, and delay in asserting his rights. Some affirmative act of the owner must be shown; as, for example, that he by word or act created the impression that the adverse title was valid, and thereby induced another to act; or knowing that another was about to acquire the apparent title in good faith, stood by and willfully suffered it to be consummated. An omission, to be an estoppel, must be in reference to some duty devolving upon him. Where the law allows one a certain time in which to assert his right, it is implied that his right will remain available to him during that period; and although fully informed of the adverse claim, his waiting merely can not be held of itself to bar his title. This is what appellee claims; but the authorities he quotes do not go to that length. The exception to the plea should have been sustained. It appears, furthermore, that there was no evidence that was sufficient in law to create such estoppel, and the court properly gave a charge asked by the defendant to that effect, and directing them not to consider the plea. The court, however, in the said ninth paragraph, submitted the issue concerning estoppel; and this charge, although embodying a correct proposition of law, was improper, for the reason that it submitted an issue in connection with which there was no evidence the jury could consider, and thus the charges were contradictory and of such a nature as tended to mislead and confound the jury.

It seems that about 1853 the certificate was delivered to one Brown to be located, and appellant argues that the certificate being a chattel and assignable by parol, Brown having possession of it had power to dispose of it. This is not tenable. If he was invested with the ostensible agency to dispose of it, it is not shown that he ever undertook to exercise it.

From the views above expressed, it follows that no title was shown in defendant either by deed or by estoppel.

It remains to consider the defenses of limitations. There was no basis for the claim under the statute of three years. We think, however, that the deed purporting to be from James Chamberlain to Newton J. Chamberlain, Jr., although inadmissible as a muniment of title, would have been admissible for the purpose of a deed in connection with the five years statute, if it had been necessary for that purpose. The possession testified to in support of this plea was that of Arispe and his heirs, and the deed to which this possession was referable was the transfer to Arispe of 1873, and the prior deed in his chain of title, to-wit, the transfer of 1854, was immaterial to this issue. This transfer to Arispe was recorded on March 29, 1876. There was evidence of the payment of taxes from 1875 to the time of the trial, by defendant and the Arispes. The certifi-

cate was located, it seems, in 1874. Notwithstanding the affidavit of forgery was likewise directed to the deed to Arispe, and its execution was not proved, we are of opinion that this deed or transfer was admissible for the limited purpose of prescribing the land by the five years statute. It is not necessary, in respect to this plea, that the deed used should have conferred any title; it is simply required to possess the appearance of a valid deed. In such case the execution of the deed need not be proved, otherwise an affidavit of forgery would, in cases where the defendant finds himself unable to prove his deeds, have the effect not only of defeating his title, but also of depriving him of a title by limitations which accrues to him by virtue of his deed being one that has upon its face the essentials of a conveyance, duly registered. We make this declaration of the law in order that the deed or transfer may have its proper force, although it may not be admitted to convey title. Parker v. Newberry, 83 Texas, 430; Wofford v. McKinna, 23 Texas, 43.

We do not think it proper to discuss the sufficiency of the evidence with reference to possession, nor the feature of forgery touching the deed under which it is sought to obtain the benefit of the statute of five years, inasmuch as the case must be reversed for reasons already given, and the testimony on this subject may be different on another trial. Nor do we deem it necessary to discuss the questions raised in reference to the statute of ten years.

As the evidence stood, there should have been nothing submitted to the jury but the defense of limitations. The submission of the other issues was calculated to divert the attention of the jury from what was proper to submit to them, and it is not clear that their verdict was not the product of the erroneous charges.

Therefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 15, 1893.