HANKS et al. v. HOUSTON OIL CO. OF TEXAS. (No. 6571.)

(Court of Civil Appeals of Texas. Galveston. Dec. 15, 1914. On Motion for Rehearing, Feb. 8, 1915.)

1. APPEAL AND ERROR ☞927 — BURDEN OF SHOWING ERROR — DECISION OF TRIAL COURT.

In trespass to try title, in which a peremptory instruction is given for defendant, the court not indicating on what issue the instruction was based, plaintiff, to obtain a reversal, must show that there was evidence to take all the issues, on which a peremptory instruction might be based, to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. ☞927.]

2. ADVERSE POSSESSION ☞25—CONSTRUCTIVE POSSESSION—POSSESSION OF PART—TENANCY CONTRACT.

A defendant in trespass to try title shows constructive possession of the whole of a league of land for purposes of the five-year statute of limitations, where M., holding 43 acres thereof under a deed describing the land as without the boundaries of the league, the grantee believing that the 43 acres was no part of the league, attorned to the defendant on a claim of title by defendant, and takes a tenancy contract for the whole league more than five years before suit.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 116–120; Dec. Dig. ☞25.]

3. ADVERSE POSSESSION ☞43—POSSESSION OF TENANT — ATTACKING SUCCESSIVE POSSESSIONS.

Under such circumstances, that an agent of defendant, ignorant of the prior contract, takes a new tenancy contract within five years before suit, would not destroy the constructive possession, if considered as a mere continuation of the first lease, and, if considered as a new lease, defendant had the right to tack the successive terms under the two leases.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 213–224; Dec. Dig. ☞43.]

4. LIMITATION OF ACTIONS ☞192 — AVOIDANCE OF DEFENSE—PLEADING AND PROOF—FORGERY OF DEED.

To defeat the five-year statute of limitations because of the forgery of a deed under which the defendant claims, plaintiff must affirmatively allege and prove the fact.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 699–702; Dec. Dig. ☞192.]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by S. G. Hanks and others against the Houston Oil Company of Texas. From a judgment directing a verdict for defendant, plaintiffs appeal. Affirmed.

John B. Durrett, of Belton, Singleton & Nall, of Kountze, Leon Sonfield, of Houston, and C. E. Mead and Smith & Crawford, all of Beaumont, for appellants. H. O. Head, of Sherman, and Hightower, Orgain & Butler and Lipscomb & Lipscomb, all of Beaumont, for appellee.

McMEANS, J. This is an action of trespass to try title, brought by appellants against the appellee to recover the title to and possession of the league of land originally granted by the state of Coahuila and Texas to A. W. Smith, situated in Hardin county. The appellee, defendant in the court below, in addition to the pleas of general denial and not guilty, specially pleaded the statute of limitations of three and five years. In answer to the pleas of limitations, the plaintiff pleaded by supplemental petition that the defendant, in the absence of the five years' statute of limitation, and the plea thereof, would deraign title through and under a forged deed, to wit, through and under a purported deed from A. W. Smith to John R. Stevens, which deed plaintiffs alleged was forged. Against this deed plaintiffs filed an affidavit of forgery. Trial was had before a jury, and the court, upon the close of the evidence, instructed the jury to return a verdict for the defendant, which was done, and judgment was thereon entered accordingly, from which judgment the plaintiffs, after their motion for a new trial had been overruled, have appealed.

[1] The court, in giving the peremptory instruction, did not indicate upon what issue the instruction was based, and it therefore became necessary for the appellants, through proper assignments of error, to show that the evidence adduced upon the trial was sufficient to raise each issue which could have been raised under the pleadings and to require its submission to the jury. This they have attempted to do, and if they have done so the judgment must be reversed. But on the contrary, if the evidence adduced upon any of such issues by the defendant was without dispute and was such as to warrant the giving of the peremptory instruction, the judgment must stand, notwithstanding the evidence upon other issues may have been conflicting.

Among the other issues presented by the pleadings of defendant was that of title by virtue of the statute of limitations of five years. Appellant by and under its fifth assignment of error has undertaken to establish that the evidence offered upon this issue, if not conclusive against defendant, was not conclusive in defendant's favor, but that it was at least of such character as to require the issue to be submitted to the jury. We copy the assignment:

"The court erred, to the prejudice of plaintiffs, in instructing the jury to find for the defendant in this case, because, if such instruction

was given on the theory that defendants had shown title under the five years' statute of limitation, then plaintiffs would show to the court that the undisputed evidence in the case shows that W. R. Mitchell, under whom defendant attempted to make out its title of limitation under the five years' statute, went into possession of 43¾ acres of land, a part of the A. W. Smith league, under a deed from C. B. Oglesby in 1901, which said deed described said 43¾ acres by metes and bounds, and that said 43¾ acres had been theretofore surveyed on the ground and the lines and corners plainly marked, and that said 43¾ acres had been effectually segregated from the remainder of the A. W. Smith league long prior to any lease contract between the said Mitchell and defendant, and that said Mitchell did not change his actual holdings or possession after his entry within the period of five years before this suit was filed; that C. B. Oglesby went into possession of said 43¾ acres in 1882 and lived on it, claiming it as his own, and claiming it as against the Smith league, and lived on it continuously, cultivating, using, and enjoying the same till the latter part of the year 1901, when he sold the same to W. R. Mitchell, and that said Mitchell immediately went into possession thereof and used and enjoyed the same continuously, claiming it as his own till April, 1903, having thereby perfected title in said W. R. Mitchell to said 43¾ acres of land under the statute of limitation of ten years, thus showing that said 43¾ acres were segregated from the balance of the league, or at least the evidence raised an issue on that point which should have been submitted to the jury under proper instructions; and further the testimony showed, or tended to show, that, if Mitchell executed a lease to defendant in 1903, same was never delivered and did not in fact become effective, and, if same did become effective, then the testimony shows that it was superseded and abrogated by the lease executed in September, 1906, and that said lease of date 1906 was a restricted lease and not sufficient to extend the possession of Mitchell to the entire league, and that the said Mitchell was all the time claiming the land which he had in possession as his own, and, if the evidence did not show conclusively that Mitchell was not holding the whole league for the defendant, it at least was sufficient to raise that issue, and should have been submitted to the jury under appropriate instructions, as shown by paragraph 4 of plaintiffs' motion for a new trial."

The following facts are undisputed: Appellee claimed the land in controversy, under a deed or deeds duly registered, for more than five years next before the filing of this suit, and during said time paid all taxes thereon as the same fell due. Prior to 1901 one C. B. Oglesby, believing that a small tract of 43¾ acres of land in Hardin county was unappropriated public domain, settled thereon with a view of acquiring title thereto by pre-emption, and had the lines run out by a surveyor. He made certain improvements on this tract in the way of clearing the land and preparing it for cultivation, building houses, etc., and thereafter lived upon the land until some time in December, 1910, at which time he sold to W. R. Mitchell, executing to him a deed which described the land as follows:

"All our right, title and interest in that certain tract of land, beginning on the south line of the Duncan league, thence west to east line of Pevito; thence south to corner of M. Cottle survey; thence east to line of David Choate; thence east to west line of A. W. Smith; thence north with west line of A. W. Smith to place of beginning, containing 43 acres more or less."

Oglesby when he sold, and Mitchell when he bought, believed that the 43¾ acres was no part of the A. W. Smith league, and Mitchell's deed described the tract as lying west of the Smith, while the uncontroverted fact is that the tract was upon the Smith and about 1,000 varas east of its west line. After Mitchell bought he moved on the land theretofore claimed by Oglesby, lived in the house, and cultivated the land that Oglesby had built on, and cleared and made some additional improvements thereon. But in 1902 Mitchell learned that the land he bought from Oglesby was not vacant land, as claimed by the latter, but that it was a part of the Smith, and thereafter on April 3, 1903, he executed to appellee a contract of tenancy whereunder he agreed to hold the entire league in subordination to the appellee's title for the full period of five years, in consideration that he was to have free use of all timber and wood thereon reasonably necessary for fuel and for improvement upon said property, and at the end of the five years he was to have a deed to some of the land. In pursuance of this contract Mitchell lived upon the land, and upon the same tract which Oglesby had surveyed, keeping inclosed and cultivating a portion thereof, extending his improvements over additional land, but not beyond the boundaries of the 43¾ acres which Oglesby had caused to be surveyed when he thought it vacant land, except as hereinafter stated. He had eight or ten acres in cultivation in 1901 and 1902, and from year to year, after signing the contract of tenancy, extended his fences until he had about 25 acres inclosed. In 1906 he built a house on the Smith beyond the limits of the 43¾ acres surveyed for Oglesby, and in 1908 he fenced in a pasture of some 100 or 150 acres on the Smith, which was on no part of the survey made for Oglesby. Mitchell lived upon the land for the full period of five years after executing the tenancy contract, as a tenant of, and holding possession of, the entire league for appellee, and during said time the appellee, claiming the entire league under a deed from the Texas Pine Land Association, dated July 31, 1901, and duly recorded in the deed records of Hardin county on August 7, 1901, paid all taxes thereon. After Mitchell had been on the land about three years after signing the tenancy contract, an agent of appellee, different from the one with whom he made said contract, came and took a new contract of tenancy from him, dated September 11, 1906, covering the same property and giving Mitchell substantially the same rights as were given in the first lease. The explanation of this is that the agent last referred to did not know of the previous contract and was not informed of

it by Mitchell. This contract, omitting the formal parts, is as follows:

"Know all men by these presents: That we, W. R. Mitchell and Ella Mitchell, wife of the said W. R. Mitchell, of the county of Hardin, state aforesaid, in consideration that the Houston Oil Company of Texas, a corporation duly incorporated and existing under and by virtue of the laws of the state of Texas, with its principal office in the city of Houston, Harris county, Texas, now owning in fee simple the following described tract or parcel of land, to wit: [Here follows description]—and is desirous of placing tenant upon said land for the purpose of protecting any and all persons from cutting and removing the timber now situated, standing and growing thereupon, and for and in consideration that we are to use and enjoy, until the first day of January, A. D. 1912, the improvements situated thereon for farming use only, free of charge or rental, we, W. R. Mitchell and Ella Mitchell, husband and wife aforesaid, do hereby acknowledge our tenancy under the above-named company and obligate and bind ourselves to use said land for farming purposes only, until the said first day of January, 1912, and that we will not cut and destroy any timber thereupon, and as agents and tenants as aforesaid will prevent any and all trespasses from others of whatsoever nature, upon said land and timber, and at the expiration of the above-specified time, to wit, January 1, 1912, we will vacate, deliver and turn over the above-described premises unto said company, their successors or assigns, in as good and perfect condition as they are now, free from all charges, costs, expenses or delay to it (the said company) whatsoever."

[2] We think that, under the foregoing undisputed facts, every element essential to a title under the five years' statute was proved. Here we have the assertion of a claim under a duly registered deed, and actual adverse possession with cultivation, use, and enjoyment of a part by a tenant which drew to it the constructive possession of the claimant to the whole, and the payment of all taxes concurrently with such actual possession; the whole covering a period of full five years. It is our opinion, therefore, that, upon the theory that appellee had title under the five years' statute of limitation, the court did not err in instructing a verdict for appellee.

But appellants contend that Mitchell having entered upon and taken actual possession of a part of a 43¾-acre tract of the league under a deed describing the tract by metes and bounds, and his claim being coextensive with his deed, his actual possession of a part gave him constructive possession of the 43¾ acres thus segregated from the balance of the league; that, the constructive possession of the appellants as the true owners having been thus invaded, they were charged by law with notice of the nature and extent of Mitchell's claim manifested by such actual possession, which was fixed and determined by the deed under which the possession was taken; and that the subsequent attornment by Mitchell to appellee and acceptance of a lease from appellee to the entire league, being unaccompanied by a change of possession, did not give appellee constructive possession of the balance of the league—and in support of these contentions cite the Texas cases of Hol-

land v. Nance, 102 Tex. 177, 114 S. W. 346, Broom v. Pearson, 98 Tex. 469, 85 S. W. 792, 86 S. W. 733, and Hill v. Harris, 26 Tex. Civ. App. 408, 64 S. W. 820, none of which are, in our opinion, applicable under the facts of this case. In the case first cited it is held that where an owner, in inclosing his land, extends his fence by mistake as to the boundary line, so as to include a portion of an adjoining tract which he had no intention of claiming, no adverse possession thereof was acquired beyond the limits of his inclosure. In Broom v. Pearson, supra, the holding is that the possession of the east half of a survey held as a distinct tract under one deed, describing it alone, could not be extended by construction to the boundaries of the west half of the survey held under another deed. In Hill v. Harris, supra, it is decided that one holding part of a tract of land under deed duly recorded cannot extend his holding to the balance of the tract never in his actual possession, so that the statute of limitations will run in his favor, by executing a lease for the whole to his tenant. All of these cases are correct in principle under their facts. But the facts of these cases are widely variant from the facts of this. If Mitchell had been claiming 43¾ acres of the A. W. Smith league under the deed from Oglesby correctly describing the land as being a part of the Smith, it is reasonably clear, from the authorities cited, that he could not extend his possession of the tract conveyed to him by construction to the entire league. And it may be that in such circumstances, had Mitchell acknowledged tenancy to appellee of the entire league, his actual possession of the smaller tract would not have drawn to it, by construction, the possession of the entire league. But this is not the case before us. Here Oglesby settled upon land supposed by him to be unappropriated public domain, and had it surveyed and its boundaries established. He did not intend to settle upon the Smith, nor did he claim or intend to sell, nor did Mitchell intend to buy any portion of the Smith. Oglesby's deed to Mitchell did not describe, nor did it convey any portion of the Smith. If the true owner of the Smith had seen this deed, or the record of it, he would not have been put on notice thereby that Mitchell was claiming or had a deed to any of his land. All this being true, Mitchell's standing, in so far as the appellee, as a claimant of the land under a duly registered deed, is concerned, was that of a squatter or trespasser. When he learned that the land he had purchased from Oglesby was upon the Smith, he at once renounced any title thereto, and signed the contract of tenancy for the entire league. We do not think there can be any difference in principle if, instead of the entry by Mitchell upon the land under the circumstances detailed, he had entered upon it with a view of acquiring title by limitation to a specific portion of it, and then, when

called upon by a claimant, yielded his claim thereto and accepted a tenancy contract for the entire league. In the circumstances last stated the authorities warrant the holding that, even had the contract of tenancy limited the tenant to the improved portion of the land, the possession of the owner would thereby be extended by construction to the whole. Bowles v. Brice, 66 Tex. 730, 2 S. W. 729; Collier v. Couts, 45 S. W. 485; Frazier v. Houston Oil Co., 161 S. W. 20; Parker v. Cockrell, 31 S. W. 221; Cameron v. Blackwell, 53 Tex. Civ. App. 414, 115 S. W. 857; Cook v. Coleman, 33 S. W. 756.

[3] But appellants contend that, as Mitchell during the term of the first lease entered into a new lease with appellee, the new lease superseded and abrogated the first, and that Mitchell's possession after the execution of the second lease in 1906 was referable thereto, which lease was only to a part of the league; but that, if construed as a lease of the entire league, possession was not had thereunder the requisite length of time to give appellee title by limitation.

The circumstances attending execution of the new lease in 1906 have hereinbefore been explained. That it was a lease of the entire league we think there can be no doubt; the consideration moving the lessor being the free use of the improved portion thereof for farming purposes only. That the first lease was not, and was not intended to be, abrogated by the execution of the second, is fully shown by the testimony. Mitchell testified that he had been in possession continuously since the execution of the 1903 lease and holding the entire league for the appellee, recognizing the appellee's title; that, when the agent took the second lease contract in 1906, he did not know whether he (the agent) knew of the first or not; that the appellee agreed, in the event he should carry out the contract of lease as originally entered into, to convey to him a certain number of acres, which should be his at the end of five years. He testified that he had performed the contract, and, after the expiration of five years from the date of his first contract, the tract was conveyed to him; a part of it being that used by him during his tenancy, and a part was taken from another but adjoining portion of the Smith. When asked whether he had repudiated the 1903 lease at the time of the execution of the one in 1906, he answered: "I had not." He said that he had no intention of relinquishing the 1903 lease, because he considered that he had to comply with that in order to get title to the land that was promised him.

W. A. McLelland, who secured the 1906 lease from Mitchell, testified that he found Mitchell in possession of Smith league in 1906, and, not knowing of his prior connection with the appellee, he got him to sign the lease.

We think that, under these facts, the lease of 1903 was not abrogated or superseded by

taking the lease in 1906, but that appellee's possession through its tenant Mitchell was referable to the tenancy contract of 1903. But if this is not so, and the 1903 lease was superseded by the later one, appellee would not thereby be deprived of his defense of limitation, because under both leases Mitchell was tenant of appellee, and as such held adverse possession for five years, and his possession under the first lease could be tacked to his possession under the second.

In concluding that appellee has title under the statute of limitation of five years, we are not unmindful that article 5674, Revised Statutes, provides that the article shall not apply to any one in possession of land who, in the absence of the article, would deraign title through a forged deed, and that no one claiming under a forged deed or deed executed under a forged power of attorney should be allowed the benefits of the article.

[4] When the five years' statute of limitation is pleaded as a defense in an action for the recovery of land, it is incumbent upon the plaintiff, if he would render such defense nugatory because of the forgery of a deed under which the defendant claims, or because, in the absence of the article, the defendant would deraign title through a forged deed, to affirmatively allege and prove such fact or facts. Harris v. Linberg, 39 S. W. 651; Chamberlain v. Showalter, 5 Tex. Civ. App. 232, 23 S. W. 1017. In recognition of this rule the plaintiffs, as hereinbefore shown, in answer to defendant's plea of limitation of five years, pleaded that the defendant, in the absence of the five years' statute of limitation, would deraign title through a forged deed. From the necessity to plead a fact generally results the necessity of proving it affirmatively. The plaintiffs assumed the burden of proving the forgery, and introduced a mass of evidence, which we have closely scrutinized, but which we think was wholly insufficient to raise the issue, because it consists of negative, disjointed circumstances, not inconsistent with the genuineness of the deed. Much of the testimony offered by appellants upon this issue was rejected by the court, and of this they complain by an appropriate assignment of error; but after careful consideration we have reached the conclusion that, if the rejected evidence had been admitted and added to that which was admitted, it would have been not more than sufficient to raise a surmise or suspicion that the deed had been forged, and wholly insufficient to require the submission of the issue to the jury.

Upon the consideration of the foregoing, it is our opinion that the judgment of the court below should be affirmed; and it has so been ordered.

Affirmed.

### On Motion for Rehearing.

At the request of appellant we make the following additional findings of fact:

(1) The contract of tenancy or lease executed by Mitchell with the Houston Oil Company of date April 3, 1903, was filed for record on September 27, 1910.

(2) Mitchell, after the execution of the tenancy or lease contract of April 3, 1903, rendered the 43¾-acre tract for taxation as a part of the Oglesby survey for the years 1903 to 1908, inclusive, and probably up to 1909 or 1910.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes