## DURHAM et al. v. HOUSTON OIL CO. OF TEXAS. (No. 81.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 8, 1917. Rehearing Denied March 7, 1917.)

1. ADVERSE POSSESSION ⬤⇒66(1)—CONSTRUCTIVE POSSESSION—POSSESSION BY LESSEE.

H., through M., his lessee of a league of land, has constructive possession of all of it, for purpose of adverse possession, though at the date of lease M. was in possession of 43 acres of the league under a deed describing it as outside the league, and which till about that time he believed was outside the league, though M. did not, by improvement and cultivation, extend his possession outside the 43 acres.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 371–377.]

2. ADVERSE POSSESSION ⬤⇒70—POSSESSION BY LESSEE.

To put the 5-year statute of limitations in operation under a lease contract, the contract need not be recorded, nor in writing, nor delivered, if in writing, but it is enough if the relation of landlord and tenant under it is created and recognized and understood by its parties.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394–414.]

3. ADVERSE POSSESSION ⬤⇒13 — FIVE-YEAR STATUTE.

One has title under the five-year statute of limitations, having had of record a deed properly describing the land and having paid the taxes for 5 years, with a tenant on the land for such time under a lease contract covering the entire tract.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76.]

4. ADVERSE POSSESSION ⬤⇒60(2)—DEGREE OF PROOF.

Title under the 10-year statute of limitations is not shown by the mere fact that one entered and lived on land for 10 years under some kind of a trade with the original grantee, claiming the land for that time, as evidence that possession was adverse, and not by permission, must be clear and positive.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 283, 284.]

Appeal from District Court, Hardin County; J. Llewellyn, Judge.

Action by the Houston Oil Company of Texas against Ralph Durham and others. Judgment for plaintiff, and defendants appeal. Affirmed.

R. L. Durham, C. W. Howth, W. R. Blain, and E. E. Easterling, all of Beaumont, for appellants. H. O. Head, of Sherman, and Parker & Kennerly, of Houston, for appellee.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

DAVIS, J. This suit was brought by the appellee, Houston Oil Company of Texas, against the appellants, Ralph Durham, C. W. Howth, W. S. Bruce, and L. G. Roberts, on May 18, A. D. 1914, in the district court of Hardin county, Tex., to recover possession of the A. W. Smith league in Hardin county This suit, as brought, was not as a statutory action of trespass to try title, but to protect plaintiff's alleged continuous possession, under claim of right, for 13 years, to the land, against intrusion by defendants on April 20, 1914, without first having evicted plaintiff in any lawful manner, and prayed for a writ of injunction to restrain defendants from in any way trespassing upon the land, or cutting or removing timber therefrom, and from in any way interfering with plaintiff, or those holding under it. On March 9, A. D. 1914, Mary Stockholm, Oliver Keith, George Keith, William Gentz, and Henry Gentz intervened in said cause, making themselves parties defendants, and alleging in their plea of intervention, in substance, as follows: Interveners claim to be the owners of 640 acres out of the A. W. Smith league, which league is described in plaintiff's petition, and that as owners of said 640 acres of land, they placed the defendants R. L. Durham, C. W. Howth, L. G. Roberts, and W. S. Bruce in possession thereof, and interveners pray that they be permitted to defend this suit; and, answering, the defendants and interveners disclaim as to all of the A. W. Smith league, except 640 acres, and then set up as a cross-action their title to an undivided interest of 640 acres in the A. W. Smith league, under the 10-year statute of limitation, to be run out so as to include the improvements placed thereon by George Keith, under whom defendants claim. These defendants further set up that S. G. Hanks and others were asserting some kind of a claim to the A. W. Smith league, and prayed that they be made parties to this suit. Thereafter, on June 29th, A. D. 1915, George Womack and others intervened in this suit, claiming the land in controversy against all parties to the suit. The defendants Ralph Durham, C. W. Howth, L. G. Roberts, and W. S. Bruce, and the intervening defendants Mary Stockholm, J. O. Roberts, William Gentz, George A. Gentz, Oliver Keith, and Mrs. Oliver Keith, Arthur Roberts, and Laura Harris, filed their amended answer, setting up by metes and bounds a description of the improvements made by George Keith, and pleaded the 10-year statute of limitation to an undivided 640 acres out of the A. W. Smith league, to be run out so as to include the described improvements, which limitation was claimed to have ripened into a title prior to January 1, A. D. 1860, and prayed that partitioners be appointed to partition the land. Plaintiff filed its supplemental petition, setting up, in addition to the other pleas, the 5 and 10 year statutes of limitation. When the case came to trial, the interveners, George Womack et al., took a nonsuit, and the defendants and other interveners dismissed their suit against S. G. Hanks et al., and the case went to trial before a jury between the Houston Oil Company of Texas, as plaintiff, and Ralph Durham, C. W. Howth, L. G. Roberts, and W. S. Bruce, defendants, and Mary Stockholm, J. O. Roberts, William Gentz, George A. Gentz, Oliver Keith, and Mrs. Oliver Keith, Arthur Roberts, and Laura Harris, intervening defendants. The case was tried before a jury, and after plaintiff and defendants had introduced their testimony, the court instructed the jury to find a verdict for plaintiff, and which action of the court in so instructing a verdict for the plaintiff, is complained of by defendants, and they have brought the case to us for revision.

Appellants' first, second, and third assignments of error are as follows:

"(1) The court erred in directing a verdict in this case, because there is no evidence to raise the issue of either three, five, or ten year limitation for any period of time whatsoever in favor of the plaintiff.

"(2) The court erred in instructing a verdict in this case in favor of the plaintiff, because the evidence raises the issue that W. R. Mitchell was not holding the land as tenant of and occupying the land for plaintiff prior to the 11th day of September, 1906.

"(3) The court erred in instructing a verdict in this case in favor of the plaintiff, because the evidence raises an issue that at the time of the execution of the lease on April 3, 1903, it was agreed and understood between W. R. Mitchell and the agents of the Houston Oil Company that it was not to become operative until the Houston Oil Company should give to W. R. Mitchell some legal evidence of their agreement to convey to him a portion of the land on which he was living, and the evidence is that the Houston Oil Company never did comply with this agreement until some time during the year 1910, at which time said lease contract was delivered by W. R. Mitchell to the Houston Oil Company."

Appellants treat their first, second, and third assignments of error together, and adopt their second assignment of error as a proposition.

Appellee, plaintiff below, upon the trial of the case, introduced in evidence a deed to it, conveying the A. W. Smith league of land in Hardin county, Tex., dated July 31, A. D. 1901, which deed was filed for record August 17, A. D. 1901. It was admitted upon the trial of the case that plaintiff paid all taxes on the A. W. Smith league in Hardin county, Tex., regularly as they accrued, from 1901 down to the date of the trial.

Plaintiff also introduced in evidence upon the trial of the case, a lease from the Houston Oil Company of Texas to W. R. Mitchell and wife, covering the entire A. W. Smith league of land in Hardin county, Tex., dated April 3, 1903, and filed for record September 27, A. D. 1910. There was also introduced in evidence by plaintiff upon the trial, a lease contract between the Houston Oil Company of Texas and W. R. Mitchell and wife, dated the 11th day of September, A. D. 1906, covering the A. W. Smith league in Hardin county, and filed for record September 14, 1906.

W. R. Mitchell testified as a witness in the case, among other things, as follows:

"I live upon the Smith league of land in Hardin county, and have for 13 years. At the time of the execution of the lease between the Houston Oil Company of Texas and myself, dated April 3, 1903, already introduced in evidence, I was living on the Smith league, cultivating part of it; and I have lived on that league continuously since that time, and cultivating some of the land every year since the execution of the lease as tenant of the Houston Oil Company of Texas, and I am still on the league as their tenant."

This witness also testified further, as follows:

"At the time I executed the lease in 1903, I had bought a piece of land, and that was in conflict with the Smith league, but it was called at that time the Oglesbee survey. I was on that land for some time before I entered into this lease with the Houston Oil Company. I disremember exactly how many acres the Oglesbee tract consisted of, but it seems to me like there was forty some odd acres. I think I bought the Oglesbee tract in 1902. At the time I made the deal for the place, a man by the name of Pickett lived in the house. It was an old settled place, and I think Mr. Oglesbee first settled it; I couldn't really tell you how long he lived there. I was living in the country, but I don't remember just how long he lived there, but it was some 8 or 10 years. Mr. Pickett had been there but a short while when I bought. Oglesbee had taken a lease contract and moved over to his camp, and Pickett just lived there while he was gone; and there was a clearing on the land when I went there of some 8 or 10 acres under fence. There was a house on the land. That was about 1 year before I signed this lease. My wife and I did not, in fact, deliver that lease to the Houston Oil Company until about the expiration of the lease. I entered into the lease of 1906 a good while before I delivered the other one to the Houston Oil Company. I still held the 1903 lease. I delivered the lease of 1906, but not the other at that time. It was a year afterward that I delivered it. I think I delivered the lease when we entered into an agreement before I got the deed and recorded it, but I did not deliver the lease until I went at the expiration of the time and demanded the deed. At the expiration of 5 years they were to convey to me this land, and then I was to deliver the lease. I cannot say positively whether I delivered that lease until they delivered the deed or not. In 1906 I made another lease, which was put on record, it is true; I think the 1903 lease was never put on record, until I got the deed in 1910. The agreement when I executed the 1903 lease was that it was to remain in my possession there; that I was not to deliver it until they delivered me some written evidence of title, or an agreement to convey me a certain portion of land. I don't believe there was any other instrument showing my title to the land possessed until this deed in 1910. The 1906 lease was a separate lease altogether, and had no connection. I still retained possession of the first lease. They were to give me a written agreement to deed me a portion of the land before I surrendered my possession of adverse claim. The Houston Oil Company found me in possession in 1903, and challenged my possession, and I agreed to hold it for them, provided they would give me some written evidence of their intention subsequently to convey a portion of the land to me. In 1910 I received the deed from the Houston Oil Company. I then had in cultivation about 12 or 15 acres. At the time I made the agreement with Copley in 1903, we agreed, among other things, to change the lines of the land I was to get, and instead of taking the Oglesbee tract as it lay, I was to take a part of it and a part of the Smith outside those lines.

All of the Oglesbee field was included in the field notes of the deed I got in 1910. After we changed the lines I included the Oglesbee field and all of my improvements. We made the agreement to change the line in 1903, the agreement with Mr. Copley, who represented the Houston Oil Company. We did not survey the land, but simply ran around it with a compass and marked it off, the way we wanted it to be. That was done in 1903. That was done in order to get the balance that lay on the Smith outside the Oglesbee claim, and also to get in tillable land; more than had in the way the original tract lay; the original tract was right on the Smith league. The Oglesbee tract is on the Smith, not only the inclosure, but the entire tract. The original lease in 1903 was not executed in duplicate, and the company did not have a copy; I kept the only copy. I acknowledged it on April 3d before W. W. Dies, and my wife acknowledged it before Justice of Peace Halcomb. I was not to have any land until the expiration of 5 years. I held possession of the lease for 5 years, and later got a deed for the land. I held possession ever since for the oil company; been right there on that place continuously since 1902. In 1910 I came down and made arrangements with the Houston Oil Company to send somebody up there to run the lines, but at that time I entered into the agreement with Mr. Copley. We agreed for the lines of the land to be changed, and when Mr. Cook surveyed it, I showed him where Mr. Copley had agreed to give me this land. My tract was not laid off, nor the lines placed originally; we just walked around it, and I showed Mr. Copley how I wanted the lines run out, and he agreed that the company would give it to me that way. We did not run definite lines, because we did not know just where they would go to; we didn't measure the land off, just walked around it."

Appellants contend that the appellee could not mature a limitation title under the 5-year statute of limitation under the lease dated April 3, A. D. 1903, for the reason that this lease, under a verbal contract, was not to be delivered until the Houston Oil Company made W. R. Mitchell a deed, or gave him some written agreement to convey to him a certain portion of the land; that said lease was neither delivered nor recorded until some time in 1910, and was not therefore in effect; and for the further reason that at the time of the execution of this lease, dated April 3, 1903, W. R. Mitchell was then living upon and claiming 43 acres of the land by deed from C. B. Oglesbee and wife, describing same, and that after the execution of said lease, the said Mitchell did not, in any way extend his possession by improving or cultivating any land outside of the tract of land for which he had a deed, and that W. R. Mitchell continued to render and pay taxes upon this land until 1910, when the Houston Oil Company made him a deed.

[1] Appellants contend that the law, as stated in the case of Holland v. Nance, 102 Tex. 177, 114 S. W. 346, should control under the facts in this case. The deed from Oglesbee and wife to W. R. Mitchell, dated December 3, 1901, describes the land therein conveyed, as follows:

"Beginning on south line of Duncan league; thence west to east line of the Peveto; thence south to corner M. Cottle survey; thence east to line of David Choate; thence north to northwest corner of David Choate; thence east to the

west line of the A. W. Smith; thence north with said line of A. W. Smith to place of beginning."

Thus, it will be seen that the description in this deed locates the 43 acres of land therein conveyed adjoining the A. W. Smith league on the west, and not on the A. W. Smith league, and at the time of the execution of this deed, the grantee, W. R. Mitchell, believed that the 43 acres purchased by him from Oglesbee was no part of the Smith league, but before or at the time of the execution of this lease discovered that he was upon the Smith league. We do not think that the rule, as laid down in the case of Holland v. Nance, is applicable to the facts of this case.

The Court of Civil Appeals, in the case of Hanks v. Houston Oil Company of Texas, 173 S. W. 635, in passing upon this identical lease, the other facts in the case on the question of limitation under the lease being almost identical with the facts in this case, held that this lease, under the facts, would support the 5-year statute of limitation, and cited Bowles v. Brice, 66 Tex. 730, 2 S. W. 729; Collier v. Couts, 45 S. W. 485; Frazier v. Houston Oil Co., 161 S. W. 20; Parker v. Cockrell, 31 S. W. 221; Cook v. Coleman, 33 S. W. 756.

[2] We do not understand that in order to put the 5-year statute of limitation in operation under a lease contract, the same must be recorded, or that the lease contract must be in writing, or, if written, must be delivered; but it will be sufficient if the relation as landlord and tenant under the lease contract is created and recognized and understood by the parties thereto.

[3] We are of the opinion that the undisputed evidence shows title in appellee, by virtue of the 5-year statute of limitation, under the lease contract, dated September 11, A. D. 1906. Appellee had its deed of record properly describing the land, paid all the taxes thereon for more than 5 years, with a tenant upon the land under a lease contract covering the entire league, for more than 5 years prior to the filing of this suit.

We are also of the opinion that the undisputed evidence clearly shows title in appellee under the 10-year statute of limitation.

[4] We do not think that the testimony offered by defendants raised the issue of title in them under the 10-year statute of limitation because of the occupancy of George Keith. The testimony of Mrs. Mary Stockholm, a daughter of George Keith, was of the only witness who testified to the conditions under which her father, George Keith, entered upon the A. W. Smith league of land, and his status in relation thereto. The substance of her testimony affirmatively shows that George Keith entered upon the A. W. Smith league, under some kind of a trade with the original grantee, A. W. Smith, the nature of

which trade she did not know. Can it be claimed under this state of facts that because it could be established that George Keith lived upon the land for 10 years under some kind of a trade prior to 1860, and claimed 640 acres of land for 10 consecutive years, he would complete a title in himself to 640 acres of land under the 10-year statute of limitation? We think not. Evidence to indicate that the possession was adverse, and not by permission, must be clear and positive. Callan v. Walters, 190 S. W. 829.

This disposes of all of appellants' assignments of error, and we are of the opinion that the trial court did not err in directing the jury to find a verdict for the plaintiff, and the judgment of the lower court is therefore affirmed.