**TODD et al. v. HAND et al.**
(No. 9364.)

(Court of Civil Appeals of Texas. Ft. Worth.
June 19, 1920. Rehearing Denied
Oct. 30, 1920.)

1. **Adverse possession ⟨⟩38—Evidence establishing exclusive ownership.**

Evidence that an adverse possession claimant had fenced the land in question some five years previously, that he had cleared some of it, and recently erected a house upon it, *held* to establish an assertion of exclusive ownership under the five-year statute.

2. **Adverse possession ⟨⟩85(1) — Competent proof of execution of deed under which claimant holds is unnecessary.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, prescribing a five-year limitation period to recover against adverse possession claimants holding under registered deeds, competent proof that the deed was executed is unnecessary where it had been duly recorded and not revoked.

3. **Pleading ⟨⟩304—Forgery of deed under which claimant holds not established by affidavit.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, prescribing a five-year limitation on actions to recover land against adverse possession claimants under registered deeds and providing that persons holding under forged deeds shall not be entitled to the statute's benefit, an affidavit that deed was a forgery did not constitute evidence of forgery in fact, but merely called for proof of the deed's execution.

*On Motion for Rehearing.*

4. **Appeal and error ⟨⟩1056(1)—Excluding evidence that deed was forged not reversible error where title was claimed under another deed.**

In adverse possession proceedings under Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, prescribing a five-year limitation period where the claimant holds under a registered deed which has not been forged, excluding evidence that a deed to claimant for the land involved had been forged, is not reversible error, where the claimant had secured and claimed under a prior deed.

Appeal from District Court, Eastland County.

Action by Mrs. M. J. Todd and others against Mrs. Mattie Hand and others. Judgment for defendants, and plaintiffs appeal. Affirmed, and motion for rehearing overruled.

B. E. Moore, of Ranger, Smith & Crawford, of Beaumont, and John Hancock, of Thurber, for appellants.

Smith & Abernathy, J. R. Stubblefield, of Eastland, and L. D. Hawkins, L. C. Garnett, and W. J. Oxford, all of Thurber, for appellees.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CONNER, C. J. This suit was instituted in the usual form of trespass to try title and for damages in the district court of Eastland county on August 15, 1919, by Mrs. M. J. Todd and her children to recover 40 acres of land described in their petition, against Mrs. Mattie Hand and her children, and against the Texas Pacific Coal & Oil Company, a corporation claiming a leasehold interest in the land under Mrs. Hand, and against J. R. Stubblefield and A. M. Scott, claiming a conveyance of a royalty right from the Hands. It appears that W. R. Todd and I. B. Hand on the 20th day of February, 1882, together purchased the land in controversy, and Mrs. Todd now claims it as the community survivor of her husband, long since deceased, and her children claim as his heirs. I. B. Hand was a single man at the time of his and Todd's purchase, but later intermarried with Mattie Todd, now Mattie Hand, daughter of Mr. and Mrs. Todd. He died some time during the year 1918, and his surviving wife, Mattie Hand, claims a life estate in one-third of the undivided one-half interest of her deceased husband, it being his separate property, and her children claim the fee-simple title as heirs of I. B. Hand, the claim of the Hands being made subject to the leasehold interest claimed by the Texas Pacific Coal and Oil Company, and the royalty interest claimed by Stubblefield and Scott.

The trial before a jury resulted in a verdict and judgment for the Hands, and the Todds have appealed.

We have found it necessary to consider but a single assignment of error, and we therefore confine ourselves to such other statements as are necessary to a disposition of that assignment. Among other defenses presented by the Hands was a special plea of the five years' statute of limitation, and appellants complain of the submission of that issue because (as insisted) "under the undisputed evidence defendants had not had possession of said lands adversely to plaintiffs for any period of five years with a deed duly registered." The issue as submitted is as follows:

"Have the defendants and those under whom they claim had open, adverse, peaceable, and continuous possession of the land in controversy, cultivating, using, and enjoying the same and rendering the same for taxes under a recorded deed and paying the taxes on the same for more than five years prior to the filing of this suit, which was on August 15, 1919."

To which the jury answered, "Yes."

[1] The statement of facts shows that on the 5th day of October, 1891, Mary J. Todd, as administratrix of the estate of herself and deceased husband, W. R. Todd, conveyed the land in controversy to Mattie Hand, reciting a consideration of "one dollar and other named considerations." The deed was duly recorded on the 28th day of January, 1898, in the proper records of Eastland county. It is undisputed that thereafter the Hands paid all taxes upon the land, and they further offered the following evidence as tending to show their continued adverse possession thereof up to the time of the institution of this suit, viz.: That Mrs. Todd never paid any taxes on the land in controversy while she did pay taxes on the 60 acres of land claimed by her and adjoining that claimed by the Hands; that none of the Todds ever lived on the land in controversy; that I. B. Hand built a nice home on the land in controversy in 1918; and that Mrs. Todd visited the Hands therein and made no complaint or brought suit until "after they struck oil." The evidence further shows that the 60 acres and the 40 acres referred to were for a number of years within the same inclosure and used by the Todds as a pasture. But a witness for Mrs. Todd testified that he bought the 60 acres upon which she lived in 1913, and that during the year of his purchase "Mrs. Hand fenced this land (that in controversy) off from Mrs. Todd's." Another witness testified that he cleared some 7½ acres of the land in controversy in 1913 or 1914 for the Hands, and that the tract was then fenced and had been fenced since, and that there were four or five acres cleared before he went there. It was admitted that this fence separating the tract of land in controversy from the 60 acres owned by Mrs. Todd was put up in 1913 or 1914. We think the evidence thus briefly referred to tends to establish the assertion of exclusive ownership and adverse possession on the part of the Hands within the meaning of the statute, and that therefore appellants' assignment complaining of the submission of the issue must be overruled.

As against the deed of October 5, 1891, referred to, appellants lodged an affidavit of forgery, and it is insisted that the execution of the deed has not been properly proved, in that its execution was only proven by the testimony of Mrs. Hand given in an ex parte deposition taken by appellants, to which objection was made on the ground that such deposition was unauthorized under the statutes in view of the fact that a corporation was a party defendant. There was also a contention that this deed had been rescinded by a later one from Mrs. Hand in 1910, but a special finding of the jury supported by sufficient evidence was against this latter contention.

[2, 3] The deed not having been revoked and having been duly recorded, and all taxes having been paid thereunder for the statutory period prior to the institution of the suit, it is immaterial to the issue of limitation whether the proof offered of the execution by Mrs. Hand was competent. Appellants

certainly offered no proof that that deed was in fact a forgery. Their affidavit to that effect, as is well established by the authorities, merely called for proof on the part of appellees of the execution of the deed; but it by no means constituted evidence of a forgery in fact. Mrs. Todd testified that she did not know anything about this deed and did not know there was such a deed, but on cross-examination she further testified:

"I can't remember now of making the deed. I would not swear that I didn't, nor that I did make that deed, because I can't recollect anything about the deed."

The evidence further shows that Mrs. Todd was 80 years of age, and it is therefore not improbable that she had forgotten all about the transaction. At all events, as already stated, it cannot be said that the deed was a forgery so as to preclude a claim thereunder by virtue of the statute of limitation. So far as is shown by the record, the deed has all of the necessary elements of a conveyance of the land and is fully sufficient as a basis of title under limitation, even in the absence of proof of its execution. Our statute pertinent to the subject reads as follows:

Article 5674, V. S. Tex. Civ. Stats. "Every suit to be instituted to recover real estate as against any person having peaceable and adverse possession thereof, cultivating, using or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued, and not afterward; provided, that this article shall not apply to any one in possession of land, who in the absence of this article would deraign title through a forged deed; provided, further, that no one claiming under a forged deed, or deed executed under a forged power of attorney, shall be allowed the benefits of this article."

It was said by the Galveston Court of Appeals in the case of Hanks v. Houston Oil Co., 173 S. W. 635:

"When the five years' statute of limitation is pleaded as a defense in an action for the recovery of land, it is incumbent upon the plaintiff, if he would render such defense nugatory because of the forgery of a deed under which the defendant claims, or because, in the absence of the article, the defendant would deraign title through a forged deed, to affirmatively allege and prove such fact or facts"—citing cases.

To the same effect is a decision of the San Antonio court in the case of Chamberlain v. Showalter, 5 Tex. Civ. App. 226, 23 S. W. 1017, where, among other things relating to the subject, it was said:

"It is not necessary in respect to this plea that the deed used should have conferred any title; it is simply required to possess the appearance of a valid deed. In such case the execution of the deed need not be proved; otherwise, an affidavit of forgery would, in cases where the defendant finds himself unable to prove his deeds, have the effect, not only of defeating his title, but also of depriving him of a title by limitations which accrues to him by virtue of his deed being one that has upon its face the essentials of a conveyance, duly registered"—citing cases.

To the same effect is the case of Davis v. Howe (Com. App.) 213 S. W. 609, by the Commission of Appeals and approved by the Supreme Court. So, also, is the case of Rosborough v. Cook, 108 Tex. 364, 194 S. W. 131, in an opinion by Chief Justice Phillips of the Supreme Court, where, among other things, it is said:

"The law of limitation of actions for land is founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. * * * And under the five years' statute, it is given by possession, the payment of taxes, and the registration of a naked deed. It is not the character of the deed as a conveyance of title which, under the five years' statute, helps to put limitation in motion. It assists the operation of limitation under the statute merely because of the notice given of the adverse claim by its registration as an instrument which purports to convey, not the title, but the land."

It was there further said:

"It is thus clear that a deed under the law governing five years' limitation has a character distinct from that of an effectual muniment of title. For the purpose of such limitation it performs an office unrelated to title, and although as a conveyance of title it may be futile. That office is simply to aid the possession as a means of notice of the adverse claim to the land."

Our statute, article 5679, provides that—

"Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."

It follows then from what we have said that the judgment below in appellees' favor must be sustained on the issue of limitation, regardless of other evidences of title presented by them, and that therefore it is immaterial that we enter upon a discussion and determination of the numerous other questions that have been presented which relate alone to the issues of title other than that cast by limitation.

For the reasons stated, the judgment is affirmed.

On Motion for Rehearing.

In view of appellants' insistent motion for rehearing, we have concluded to add to our original opinion that in December, 1910, Mrs. Mattie Todd, joined by her children, plain-

tiffs in the suit executed a deed to I. B. Hand, purporting to convey the 60 acres of land owned by Mrs. Todd and also the 40 acres of land theretofore conveyed to Hand on the 5th day of October, 1891. Against this deed of 1910, appellants also filed an affidavit of forgery and offered to prove by Mrs. Todd and two other of the plaintiffs claiming through W. R. Todd that at the time of the execution of the 1910 deed the 40 acres in controversy and described in the deed of 1891 were not included. The court excluded this evidence on the ground that it came within the inhibition of article 3690, Rev. Statutes, which, as applies to this case, declares that, in actions by or against the heirs of legal representatives of a decedent, neither party shall be allowed to testify against the other as to any transaction arising out of a transaction with such decedent. Error was assigned to this ruling and it is now very urgently insisted that the error is material in that the evidence shows that the exclusive possession of I. B. Hand was after the execution and delivery of this 1910 deed and attributable thereto and that therefore if the deed of 1910 was a forgery the appellees in this case would be precluded from a recovery by virtue of article 5674, quoted in our original opinion.

[4] While a majority of us are inclined to the opinion that the court ruled correctly, we do not find it necessary to determine whether the testimony offered to impeach the 1910 deed was within the purview of article 3690, for we originally concluded, and a majority of us now think, that the error, if any, is not such, under the findings of the jury and the evidence, as to require a reversal.

The evidence tends to show that in 1910 I. B. Hand desired to purchase from Mrs. Todd and the heirs of W. R. Todd the 60 acres of land theretofore owned by them; that he agreed to give therefor $900 in cash and a promissory note for $900 secured by a vendor's lien; that I. B. Hand did not have the money with which to make the cash payment and included the 40 acres of land, now in controversy and conveyed to him by the deed of 1891, in the deed of 1910 with a view of thus presenting a single title upon which he could secure a loan in order to make the cash payment of $900. Both Mrs. Hand and the notary public, who testified that he wrote the deed, affirmed by their testimony that the 40 acres was included within the descriptive terms of the 1910 deed at the time of its execution and acknowledgment. It is significant that, while in that deed, a lien was reserved to secure the payment of the note provided for on the 60 acres of land theretofore owned by Mrs. Todd and her heirs, it was not made

to apply to the 40 acres. Nor does the record present any reason except the one stated for Hand to insert in the deed of 1910 a description of the land to which he already held title under the deed of 1891. It further appears that some time after the execution of the deed in 1910 the purchase of that year was rescinded because of an inability on I. B. Hand's part to secure the money with which to make the cash payment, and pursuant to such rescission he reconveyed to Mrs. Todd and others but omitted to insert in the deed of reconveyance the 40 acres in controversy. There is nothing in the evidence to indicate that any of the appellants complained of the failure to reserve the vendor's lien on the 40 acres in controversy in the deed of 1910, nor of the failure to include it in the reconveyance made by I. B. Hand in cancellation of his purchase of the 60 acres. There is nothing to show, as we read the evidence, that I. B. Hand ever claimed a right to the 40 acres in controversy under the deed of 1910, or claimed possession by virtue thereof. On the contrary, as stated in our original opinion, after the execution and record of the deed of 1891, he and he alone paid taxes upon this 40 acres. He also, together with the Todds, had actual possession thereof. That the Todds had possession jointly with Hand is not inconsistent with his claim of right, and we conclude that Hand's possession both before and after the deed of 1910 is attributable to the deed of 1891, and we think this conclusion is in harmony with the verdict of the jury on the issue of limitation.

The motion for rehearing is, accordingly, overruled.

BUCK, J., not sitting.