**TOLBERT et al. v. McCLELLAN.**   (No. 2564.)

(Court of Civil Appeals of Texas. Texarkana. May 4, 1922.)

**1. Dedication ⬉⇒44—Evidence held not sufficient to warrant a finding that land had been dedicated as a road to public use.**

In a suit by a landowner to enjoin another landowner from obstructing a road on his own land, evidence *held* not sufficient to warrant a finding that land had been dedicated to the use of the public as a road.

**2. Highways ⬉⇒17—Evidence held not to warrant a finding that the public had acquired a right to a road by prescription.**

Evidence *held* not sufficient to warrant a finding that the public had acquired a right to a road by prescription.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Suit by A. J. Tolbert and another against T. L. McClellan, in which Mrs. A. J. Tolbert and another intervened. From judgment for defendant, plaintiffs appeal. Affirmed.

As commenced, the suit was by appellants A. J. Tolbert and A. B. Rowden against appellee McClellan. Appellants Mrs. A. J. Tolbert and V. P. Switzer afterwards became parties, by intervention, and joined the other appellants in the prosecution of the suit. Appellee owned a tract of land lying between a public road on the north and land owned by appellants on the south. Appellee's land was fenced and in cultivation, and had been for longer than 30 years, but during that time there were gaps in the fence inclosing it, at its northwest and southwest corners, through which appellants and such of the general public as desired to do so passed over it, next to the fence on the west side thereof, in going to and from appellants' land to said public road. Appellee and his vendors had gates at the gaps, which were open at times and closed at other times. Appellee having closed and locked the gates so they could no longer pass over his land as they had been doing, appellants by their suit sought an injunction to compel him to open the gates and keep same open, and also sought a recovery of damages against him for closing and locking the gates so they could not pass over his land. At the trial the court, after hearing the testimony, instructed the jury to return a verdict in appellee's favor, and, the jury having done so, rendered judgment, denying appellants any relief, and in appellee's favor for costs.

B. Q. Evans, T. D. Starnes, Evans, McCoy & Evans, and Marvin P. McCoy, all of Greenville, for appellants.

Neyland & Neyland, of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The contention presented by the only proposition in appellants' brief is that the testimony warranted a finding that the owner dedicated the strip of land in controversy to the public for use as a road, or, if he did not, that the public by prescription acquired a right to so use it, and that the trial court therefore erred when he peremptorily instructed the jury to find in appellee's favor.

The contention is predicated on testimony showing that during the 30 years immediately preceding the time when the cause was tried such of the public as chose to do so used the strip of land as a passway between the public road on the north of appellee's tract and appellants' land on the south thereof. Whether that testimony, if it stood alone, would warrant either of the findings, need not be determined; for it did not stand alone. The witnesses who gave it all further testified that during the time the strip was so used it was reached by those who traveled it through gaps in a fence surrounding the tract of which it was a part, and that during much, if not the greater part, of the time the gaps were closed by gates provided by the owners of the tract for the purpose. It thus appeared that during all the time the public was using the strip the owners thereof were asserting a right to it incompatible with an intent on their part to dedicate it to the public. "In order," said Judge Hodges, in City of Atlanta v. T. & P. Ry. Co., 56 Tex. Civ. App. 226, 120 S. W. 923, "to constitute a dedication of private property to public use, it must clearly appear that the owner intended to absolutely and irrevocably set apart the land for public use." Not only did it not so appear in the testimony referred to above, but we think it affirmatively appeared therefrom that the owners of the strip did not intend to so dedicate it, and that the use made of it by the public was permissive only on their part.

[2] Nor did the testimony referred to warrant a finding that the public had acquired a right to use the strip as a road by prescription. "Mere uses," said the author of the article on "Streets and Highways" in 37 Cyc. 25, "of another's land by the public as for a highway is insufficient of itself to establish a highway by prescription. The user must be adverse and hostile to the rights of the owner, and under color or claim of right so to use land. A user by license or permission of the owner of the land sought to be impressed with a public easement of travel is not adverse, and affords no basis for prescription, where the owner does not consent to the user of his land by the public as of right. In order to create a highway over lands by prescription the public user must be exclusive; that is, it must be such.

---

⬉⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as to show a claim of right to use the land as a highway to the exclusion of any individual right of the owner inconsistent therewith."

Appellants cite a number of cases as supporting their proposition, among them being Santa Fé Town Site Co. v. Parker (Tex. Civ. App.) 194 S. W. 487, and Railway Co v. Bluitt (Tex. Civ. App.) 204 S. W. 441, which they seem to most confidently rely upon. In the Parker Case the dedication was shown by an agreement of the owner of the land made the basis of the judgment of a court and acted on by the county, which expended $5,000 in opening and improving the road. In the Bluitt Case it appeared that the public had constantly used the land as a road for 20 to 25 years, and that those living along and near it "had repaired and kept the road in repair for many years," and it did not appear that the owner of the land during that time had subjected the land to any use inconsistent with that made of it by the public.

One of the appellants testified that—

In February, 1919, after appellee closed and locked the gates, and after he had commenced or arranged to commence legal proceedings to compel him to open them, there was "an understanding" between them "that," quoting from said appellant's testimony in the record, "the road would stay open, and I was to have a 20-foot passway, and I was to have the right to work it including himself to help me. As to what was said in that conversation about gates, I told him as far as I was concerned I did not object to the gates remaining there if he left them so I could get in and out. He said he would not keep them there unless he wanted a pasture, and I told him I did not care for them being there, so I could get in with a wagon and car. I did work the road after that conversation, and I worked it before that conversation, as far as that is concerned. I don't know how much dirt I did drag up there and fill in the holes so that the road would be in a passable condition, and I could get in and out. As to keeping the road up, McClellan told me that he would not only let me keep the road up, but he would help me himself; he would not see me do the work myself, but him and me would keep it up. I told him in that conversation that if he would give me a 20-foot passway to go in and out I would give him 20 feet on the north part of my land, so that he would have just as much tillable land as otherwise, and I mentioned that to Mr. McClellan once or twice. I don't know how many times. He was to help me keep up the road, and I was to help him set the fence back so as to give him 20 feet of my land in compensation for the 20 feet. I stand ready to do that at any time."

Whatever else the testimony quoted may have shown, it is plain, we think, it did not warrant a finding that appellee had dedicated the strip of land in question to the public for use as a road.

The conclusion reached that the conten-tion presented by the proposition in appellants' brief referred to should not be sustained requires an affirmance of the judgment.