SMITH v. LANCASTER et al.  (No. 2688.)*

(Court of Civil Appeals of Texas. Texarkana. Feb. 7, 1923. Rehearing Denied Feb. 15, 1923.)

1. Railroads ⚎63—Right of way acquired by adverse possession.

The right to have and enjoy a right of way is shown where the railroad has had adverse use and occupation continuous and uninterrupted for the statutory period of 10 years.

2. Easements ⚎5—Burden of proof on claimant.

One claiming an easement adversely without contract or express grant must show open and peaceable possession for the full statutory period, at least implied acquiescence of owner, and that possession was exclusive, uninterrupted, continuous, and under claim of right adverse to the owner, and that the owner was free from legal disability during the prescriptive period.

3. Railroads ⚎63—Evidence held to show acquisition of right of way by adverse possession.

Evidence held sufficient to show defendant railroad company and its predecessors used a right of way for over 10 years during which it had open and notorious possession under claim of right adverse to the owner.

4. Infants ⚎24—Evidence held sufficient to negative minority of owner during prescriptive period.

Evidence held sufficient to show that plaintiff during the prescriptive period was not under disability of minority where assuming that he was only one day old when his father died in 1887, he would be over 21 in 1910 when the adverse possession commenced, and over 35 in 1920 when the prescriptive period was complete.

5. Adverse possession ⚎57—Insane persons ⚎59—Claimant need not prove owner's sanity during prescriptive period, nor that he was not under disability of insanity.

To establish adverse possession the claimant is not required to prove the owner free from disabilities of insanity or imprisonment during the prescriptive period, since sanity and obedience to the law are presumed.

6. Adverse possession ⚎55—Delay in probate of will under which owner takes is not disability interrupting continuity of possession.

Under Rev. St. art. 5675, the owner or claimant of land must to avoid the bar of limitations institute suit against one claiming adverse possession within ten years next after the cause of action shall have accrued, which is the time when the adverse possession has commenced, unless he is excepted under article 5684 because of legal disability of coverture, infancy, insanity, or imprisonment, and delay in probate of a will under which he is a devisee does not lift the bar.

7. Wills ⚎722—Title of devisee not dependent upon probating of will.

Devise takes effect upon the death of testator unless otherwise directed, and the title of the devisee is not affected by the delay in probating the will, and, though a will cannot be used as evidence of title in view of the provisions of the statute until after it is probated, the existence of a cause of action to try title is not dependent thereon.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Trespass to try title by Granville Smith against J. L. Lancaster and others, receivers. From a judgment subjecting his title to defendants' easement of right of way, plaintiff appeals. Affirmed.

---

The appellant brought the suit against the Texas & Pacific Railway Company and the receivers of the railway properties, in trespass to try the title to a lot in the city of Marshall 32 varas long by 27 varas wide. The defendants pleaded not guilty and adverse possession and use of the lot as a railway right of way for more than 10 years next preceding the filing of the suit. In the statement of facts appears the following admission:

"During the progress of the trial the defendant filed a disclaimer to all of the lot sued for except a right of way 50 feet wide, that is, 25 feet from the center of the track on either side. But the easement over the land is claimed to that width, and no more."

After hearing the evidence the court decreed (1) the title to the entire lot sued for to be in the appellant, and (2) an easement of right of way for railway purposes to the defendants over the lot to the width of 15 feet, or 7½ feet from the center of the railway track as now located across the lot, on each side of the track. The appellant, the plaintiff in the trial court, appeals from the decree, contending that under the evidence a judgment should have been rendered in his favor for the whole of the lot free from an easement.

It appears from the evidence that David Smith, the agreed common source of title, purchased an acre of land, of which the lot in suit was a part, as his separate property, on March 7, 1868. He died October 1, 1887, leaving surviving him as his only heirs his son, the appellant, and a grandson, the surviving son of a deceased daughter. David Smith left a will giving a life estate to the lot in suit to the grandson, and the remainder in fee to the son, the appellant. The grandson died in childhood July 1, 1890. The will was in the possession of the appellant from the date of the death of his father until it was filed for probate on February 5, 1912. The will was duly probated on July 12, 1920. The delay in probating the will was sufficiently explained in the record as due to the fact of death of the subscribing witnesses and inaccessibility of other competent witnesses.

It appears that the Texas Southern Railway Company in 1903 laid its track across a part of the lot. The railway company built a dump about 2 feet high and 15 feet wide, and then laid the track on it, and used the strip for railway purposes. The dump and track have been maintained continuously since that date. No other part of the lot was used or occupied at any time by the railway company. The roadbed was never fenced. The Texas Southern Railway Company built the roadbed and laid the track across the lot after receiving a quitclaim deed dated September 25, 1901, from Ben Cabbiness, guardian of Winnie, Dee and Enos Dalton. The deed purported to convey as follows:

"The right of way over my lands belonging to us in Harrison county. The tract of land through which the right of way is granted and released is more particularly described as follows: 24/100 acres of the headright of Peter Whetstone in said county and state, extending from Mrs. Yates property southeast to Henry Dopplemayer land."

The deed was placed of record in 1911. It was shown that the description in this deed does not call for the same property as that in suit. It affirmatively appears that the minor children of whom Cabbiness was the guardian were not of kin to appellant, and had no claim under him to the lot. The Texas Southern Railway was sold in August, 1908, under order of the court in mortgage foreclosure proceedings, and was purchased by individuals who organized the Marshall & East Texas Railway Company. It was agreed:

"That after the organization of the Marshall & East Texas Railway Company it operated the road in the ordinary manner until January 25, 1917, when Bryant Snyder was appointed receiver, and that he operated the railroad over the lot until July, 1917, when the road from Marshall to the west was discontinued as a common carrier. But the receiver still operated the track over the lot in suit in connection with the terminal grounds south of Marshall to the Texas & Pacific Railway to the north of Marshall. In August, 1918, the receiver of the Marshall & East Texas Railway ceased to operate the railway under order of the federal court, but the receiver made arrangements with the Texas & Pacific Railway Company to operate it under a lease to serve industries located on the Marshall & East Texas terminal grounds, and in so doing operated over the lot in suit until April, 1920, when, under order of the court, the receiver made sale of the terminal grounds to the Texas & Pacific Railway Company, and that railroad company has been ever since regularly operating its cars over the track on the lot."

The defendant showed that William Neal, claiming to be the guardian of Winnie, Dee, and Enos Dalton, sued the Marshall & East Texas Railway Company for the lot in suit; and a final decree was entered on November 18, 1910, decreeing title to the lot to the plaintiffs in that suit, but, on cross-action of the railway company in condemnation, decreeing condemnation "of the land occupied by the defendant as a part of its right of way," and directing payment therefor in the sum of $50. This condemnation decree was before the will was probated. The appellant was not a party to the suit.

T. P. Young, of Marshall, for appellant.
F. H. Prendergast, of Marshall, for appellees.

LEVY, J. (after stating the facts as above). The court decreed an easement for railway purposes across the lot to the width of the railway roadbed, which was 15 feet. The appellant contends that such decree

was erroneous because (1) the evidence does not show that the appellee and those under whom it claims had and used the right of way continuously and without intermission for 10 consecutive years before the suit was filed, (2) the evidence does not show that the appellant was not, at any time during the period of adverse user and possession, under any disability which prevented the running of the statute of limitation, and (3) the evidence shows that the appellant's cause of action did not accrue until the will was probated in 1920. We think the assignments should be overruled.

The case of Hays v. Railway Co., 62 Tex. 397, was a suit of trespass to try title, wherein the owner of the land recovered the title to the same subject to the right of the defendant to enjoy the easement. There the principle was stated that—

"A party in possession of another's land claiming an easement is a trespasser if his claim is without foundation. If, in a suit by the owner of the soil, the plaintiff shows title to the land, and the defendant to the easement, the plaintiff recovers subject to the right of the defendant to enjoy the easement. If the defendant shows no title of this character the owner of the land dispossesses him altogether."

[1, 2] A "title of this character," meaning the right to have and enjoy the easement, is shown, as has been decided, where the railway company has had adverse use and occupation, continuous and uninterrupted, for the statutory period of 10 years. Shepard v. Railway Co., 2 Tex. Civ. App. 535, 22 S. W. 267; Capps v. Railway Co., 21 Tex. Civ. App. 84, 50 S. W. 643; 1 Elliott on Railroads, § 401. See, also, Baker v. Brown, 55 Tex. 377; Compton v. Waco Bridge Co., 62 Tex. 722; Click v. Lamar County, 79 Tex. 124, 14 S. W. 1048. "Ten years in this state," as stated in Haas v. Choussard, 17 Tex. 588, "would afford the same presumption of a grant, that twenty years would in England, and in other states, having the like limitation as to real actions."

"The burden of proof," though, as laid down in Railway Co. v. Wilson, 83 Tex. 153, 18 S. W. 325, "is upon the party claiming an easement in the land of another, without any contract or express grant thereto, to establish all the necessary facts from which the right may be presumed in his favor. He must clearly show open and peaceable possession for the full period required under the statute to preclude a recovery of land against one having no other title, and with at least the implied acquiescence of the owner, and that during all of such time the use and enjoyment of the right has been exclusive, uninterrupted, and continuous, and under a claim of right adversely to the owner of the fee. If there is a failure to establish any of those essential elements by a preponderance of evidence, the claim to the easement cannot be maintained." Also "the burden of proof," it seems to be settled, "rests upon the one asserting a right of way over another's land by prescription to establish the negative fact" that the owner of the tract of land against which the prescriptive right is claimed was "free from legal disability during the prescriptive period," and "against whom a right by limitation could be acquired by adverse use." City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563; West v. City of Houston, 163 S. W. 679.

[3, 4] In the instant case there is involved in the court's decree the finding of fact, having evidence, we think, to support it, that the Texas & Pacific Railway Company and its predecessors have used the strip of land for a roadbed and track in operating trains over it since 1903 to the bringing of the suit in November, 1922. And it appears that during all that period of time there was open and notorious possession and use by the railway companies under a claim of right adverse to the owner of the fee. In these facts apparently there would be a continuous use and enjoyment of the strip of land for railway purposes for 19 years, but it cannot be said that at the inception and during all that period of user of the right of way limitation would run, or a prescriptive right be acquired by adverse use. For, as the record appears, it could not be said that the appellant was "free from legal disability" during all the 19 years. By inference authorized to be drawn the appellant was not older than 21 years of age on September 30, 1908, nor over 35 years old at the time he filed the suit in November, 1922, assuming that he was one day old when his father died on October 1, 1887. In 1910 the appellant was, as appears, over 21 years old; and the period of limitation would be complete, in 1920, which date was before the filing of the suit. It was in 1910 that, as is shown, the Marshall & East Texas Railway Company, under decrees of condemnation, used, continuously and uninterruptedly, the strip of land for railway purposes. The use of the strip for railway purposes was such as, in the evidence, to clearly show that it was adverse to appellant's claim of ownership, and not under a mere permissive right or privilege from appellant.

[5] The "disability" that appellees were called on to affirmatively negative was, we think, that of minority only. The "disability of insanity and of imprisonment was not required to be affirmatively shown to not exist. Insanity and imprisonment are, unlike minority, only exceptional occurrences in the lives and experiences of mankind, and it is on this account that it is a presumption of law that all men are sane and that they obey the laws. This presumption would obtain in this record, there being no evidence to show to the contrary.

[6, 7] The point should, we think, be overruled that the appellant's cause of action did not arise until the will was probated in 1920.

There is no dispute in respect to the fact that the life tenant died in 1890, and that the will devised the fee in the land to the appellant. Under the statute the owner or claimant of the land is required, in order to avoid the statute of limitation, to "institute his suit" against one in adverse possession of the land "within 10 years next after this cause of action shall have accrued." The owner can "not afterward" bring the suit, as the language of the article states. Rev. St. art. 5675. And, according to the terms of the article, "his cause of action shall have accrued" when the adverse possession of the other person commences. There are excepted from the operation of this article of limitation such persons only who are under the legal disabilities of coverture, infancy, insanity, and imprisonment. Article 5684. The statute nowhere provides that the running of the statute will be delayed until a will is probated; and, moreover, it is the settled rule that an estate by devise takes effect immediately upon the death of the testator unless otherwise directed, and that the title of the devisee is not affected by the delay in probating the will. Long v. Shelton (Tex. Civ. App.) 155 S. W. 945. It is true that a will cannot be used as evidence of title, in view of the provisions of the statute until after it is probated in the manner and form prescribed by the law. Ochoa v. Miller, 59 Tex. 460; Moursund v. Priess, 84 Tex. 556, 19 S. W. 775. But the existence of a cause of action is not dependent on the availability of means for its enforcement. A cause of action may exist between parties who are unable to maintain the action for lack of testimony, or between parties who cannot be reached by a common jurisdiction. The will could legally have been probated at the death of the testator; and the fact that it was not done, from whatever cause, until 1920, would not rest upon a legal prohibition or excuse against its being probated earlier. Therefore it cannot be legally said, we conclude, that the cause of action in this suit did not arise before and until the will was probated.

The judgment is affirmed.