**YARBOROUGH et al. v. TOLBERT et al.**
**(No. 11403.)**

(Court of Civil Appeals of Texas.    Fort
Worth.    Feb. 13, 1926.    Rehearing
Denied March 20, 1926.)

**1. Trial ☞139(1).**

Under Rev. St. 1911, art. 1971, court may
direct a verdict, where evidence is wholly in-
sufficient to sustain material allegations of
plaintiffs' petition.

**2. Limitation of actions ☞199(1).**

Under Rev. St. 1911, art. 1971, court may
direct verdict, where undoubted facts show that
plaintiffs' action, if any they ever had, is lost by
limitations.

**3. Adverse possession ☞115(1)—Peremptory
instruction was properly given for defend-
ants, who, with predecessor in title, held un-
disputed actual possession and use of land in
controversy for more than 20 years, both un-
der 5 and 10 year statutes.**

Where defendants and their predecessor in
title had held undisputed actual possession and
use of land in controversy for more than 20
years, and for more than 10 years of such time
plaintiffs' grantor made no complaint of con-
veyance by his father to defendant's predeces-
sor in title, notwithstanding imputed notice of
conveyance by proper record of deed, *held* that
peremptory instruction for defendants was
proper under both 5 and 10 year statutes of
limitations.

**4. Trusts ☞91.**

Trust "ex maleficio" is a constructive trust
arising out of some fraud, misconduct, or
breach of faith on part of persons to be charged
as trustees, which renders it an equitable ne-
cessity that a trust should be implied.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Trust ex
Maleficio.]

Appeal from District Court, Montague
County; Vincent Stine, Judge.

Action by Mrs. M. M. Yarborough and an-
other against Mrs. Cora A. Tolbert and an-
other.    Judgment for defendants, and plain-
tiffs appeal.    Affirmed.

Culp, Culp & Culp, of Gainesville, for ap-
pellants.

Freeman, McReynolds & Hay, of Sherman,
and Benson & Benson, of Bowie, for appel-
lees.

CONNER, C. J.    The appellants Mrs. M. M.
Yarborough and Mrs. Lily Y. Cunningham,
as the surviving wife and daughter of Peter
Yarborough, deceased, instituted this suit on
July 2, 1924, against Cora A. Tolbert and
Mrs. Emma C. Elliott, surviving wife and
daughter of W. H. Yarborough, Jr., deceased,
to recover a one-eighth interest in a tract
of about 1,257 acres of land in Montague
county, Tex.    The land in controversy was
a part of the community property of B.
B. Yarborough and wife, Caroline Yar-
borough.    Caroline Yarborough died testate
on November 21, 1889, survived by her
husband, B. B. Yarborough, three sons, W.
H. Yarborough, Jr., Peter Yarborough, Lee
Yarborough, and a granddaughter, Nellie
Yarborough, daughter of Bob Yarborough, a
deceased son.    The community estate of B.
B. Yarborough and Caroline Yarborough at
the time of the latter's death consisted of
personal property and real estate in several
counties of a total value of $60,260, burdened
with community debts aggregating $45,000.
It appears that from time to time, and in
various ways, B. B. Yarborough, for the
avowed purpose of settling community debts,
conveyed different tracts of land to various
persons, and, on October 12, 1889, he con-
veyed to Peter Yarborough, through whom
appellants are claiming in this suit, 2,609
acres of land in Cooke county, for a consid-
eration of $19,663, and to R. A. Walker, in
1898 or 1899, 271 acres of land in Montague
county, for a consideration of $2,168; that
on September 26, 1900, B. B. Yarborough
conveyed to W. H. Yarborough, Jr., under
whom appellees are claiming, 1,463 acres of
land, for a recited cash consideration of $6,-
200.    It is the land described in this latter
conveyance that is involved in this suit; the
effort of plaintiffs being to recover the un-
divided one-fourth interest that Peter Yar-
borough is alleged to be entitled to under
the will and as part community estate of his
mother, Caroline Yarborough.    The attack
upon the conveyance of B. B. Yarborough to
W. H. Yarborough, Jr., dated September 26,
1900, is predicated upon allegations to the
effect that B. B. Yarborough was old and
in an infirm state of health, and that the con-
veyance was made for a false and untrue
consideration, in that there was no actual
consideration paid at the time, and that it
was in furtherance of a fraudulent intent on
the part of B. B. Yarborough and W. H. Yar-
borough, Jr., to deprive Peter Yarborough
of his lawful interest in his mother's estate
so willed to him by her.    It was further al-
leged that at the time of the conveyance
there were no community debts in existence
to authorize the execution of the instrument.

The defendants, appellees here, pleaded a
general denial and several statutes of limita-
tion.    Upon the conclusion of the evidence
the court, at the request of appellees, per-
emptorily instructed the jury to find for them,
and the plaintiffs below have appealed.

[1, 2] There can be no doubt of the power
of the court to direct a verdict where the
evidence is wholly insufficient to sustain the
material allegations of plaintiffs' petition,
and where the undoubted facts show that
plaintiffs' action, if any they ever had, is
lost by limitation.    Rev. Civ. Stat. art. 1971;
McMonigal v. State (Tex. Civ. App.) 45 S.

(282 S.W.)

W. 1038; Turbeville v. Book (Tex. Civ. App.) 226 S. W. 814; Smith v. McBroom (Tex. Civ. App.) 203 S. W. 1130; Meyer-Foster Realty Co. v. Read (Tex. Civ. App.) 195 S. W. 987; G., H. & S. A. Ry. Co. v. Faber, 8 S. W. 64, 77 Tex. 153; Adels v. Joseph (Tex. Civ. App.) 148 S. W. 1154.

The evidence that no consideration was paid by W. H. Yarborough, Jr., for the conveyance of September 26, 1900, is very unsatisfactory, and it is exceedingly doubtful whether in any event it is sufficient to authorize a verdict in appellants' favor on this issue. In substance, the only evidence offered by the appellants in support of this issue was that of appellant Mrs. M. M. Yarborough. She testified in effect, that she was acquainted with the business affairs of W. H. Yarborough, Jr., from September 26, 1900, and that at that time he was not in a financial condition to pay $6,200 in cash; that at that time B. B. Yarborough was 72 years old and had suffered several strokes of paralysis, after which he never regained his former vigor and mentality. She further testified that in her opinion B. B. Yarborough had sufficient mental capacity to understand a business transaction at the time the deed was executed by him on October 12, 1899, to Peter Yarborough. She further testified:

"I have not stated what consideration was paid by W. H. Yarborough, for I don't know: and as to whether or not I know what the purpose and object of the conveyance of September 26, 1900, was, will state * * * I never heard of it until I saw it in the abstract in November, 1922. I don't know whether B. B. Yarborough was indebted to W. H. Yarborough on September 26, 1900, or not. I don't know what indebtedness existed. As to whether or not W. H. Yarborough paid B. B. Yarborough a consideration in cash as stated in the deed, will state I don't know whether he did or not. I have not stated that I know no consideration was paid for said conveyance. As to my knowledge of the mental condition of B. B. Yarborough at the time this deed was executed, whether sound or unsound, will state I have no knowledge of his mental condition at the time the particular deed was executed, because, as I have already stated, he was at the home of Mrs. Nellie Odneal at that time, and all I know about it is from hearsay."

Mrs. Cora Tolbert, one of the appellees, testified that the estate of W. H. Yarborough owed some money; that the value of the estate in excess of its debts was probably $100,000; that W. H. Yarborough had good credit, and had no trouble in getting money when he needed it in his business operations; that he had about $10,000 life insurance, which, with some more money, was used in paying his debts; that in 1889 and 1900 he was engaged in live stock farming, and did his banking business in several banks in Gainesville, Sherman, and Oklahoma; that his credit was such that he could obtain money at the banks without security; that the deed to W. H. Yarborough had been signed in the office of Potter & Potter, at Gainesville, who were attorneys for B. B. Yarborough; that the first time she saw the deed her husband had been away from home; that at the time he left home he had some money with him, and when he came back he had this deed; that the consideration recited in the deed shows to be $6,200. She further testified:

"I knew what the actual consideration was in connection with that transaction. I know we paid some money and we paid some in stock. There was some improvements on the B. B. Yarborough place, * * * and we expended some money on that place for him, and then we paid the taxes and the court costs, and we paid insurance—we had the place insured for three years. There was also a note executed as a part of the consideration, but, due to the fact that it has been so long, some 25 or 30 years having elapsed, I am unable to say how much was paid by cash, how much by note, and how much by other property, and I have no record from which I can testify as to the identical amount. My husband had a deed to this property, but that was executed in 1899, and I know that a consideration had been paid in connection with the deed before this note was executed, but I don't remember the exact amount, but I do know that he had paid some on this land under this deed."

However, we think we need not dwell upon this phase of the case, for, as it seems to us, under the undisputed evidence, appellants were barred of whatever right they may ever have had in the land in controversy. The undisputed facts show that B. B. Yarborough died in 1901; that Peter Yarborough, through whom appellants claim title, died on October 15, 1911, a little more than 11 years after the deed from B. B. Yarborough to W. H. Yarborough, Jr. This latter deed appears to have been recorded on the date of its execution, and the evidence is undisputed to the effect that Peter Yarborough at no time complained of the conveyance from his father to his brother, W. H. Yarborough, Jr., or asserted any right to the land involved in that conveyance. Cora Tolbert testified without contradiction that W. H. Yarborough, Jr., got possession of the land some time in December, 1899, and that since his death she and her daughter, Mrs. Elliott, have had it; that the land is fenced and used as a stock ranch; that no one during the lifetime of W. H. Yarborough claimed title to the land; that after his death she had possession of it as administratrix of the estate, and had had possession of it ever since; and that no one had ever questioned her title to it up to the time this suit was filed; that she had the land leased for grass, and it was at the time of the trial in possession of a tenant who had leased it for 5 years; that during the life of her husband, W. H. Yarborough, he used it as a ranch, and had cattle on it from in December 1889,

until the time of his death, and had it stocked with cattle at that time.

Hogue Young testified that he lived in Bowie, Tex.; was city marshal of that town, and had been in Montague county over 40 years; was acquainted with the land involved in this suit; that he owned land in the same vicinity; that he had been acquainted with the land in controversy some 40 years; that it had been fenced over 30 years ago; that, since W. H. Yarborough's death, it has been leased to various parties by Mrs. W. H. Yarborough, and he knew of no one else claiming or asserting title to the property from the time W. H. Yarborough took possession until the time of the suit; that it had been generally understood that it was their land during all of that time.

Emory Tolbert testified to the effect that he was a practicing lawyer in Sherman and knew B. B. and W. H. Yarborough; that he remembered when W. H. Yarborough died; that, after his death in December, 1902, he married his widow; that the first time he saw the land was in 1903; that his wife was holding the land as administratrix under the estate of W. H. Yarborough and was leased by her; that the first year it was leased was in 1902; that it was leased to John Witherspoon for the years 1902 to 1906, inclusive; that in 1907 it was leased to B. T. Low; that it had been leased to different parties up to the present time; that the taxes on the land had been paid by his wife and Mrs. Elliott; that during all that time his wife and Mrs. Elliott claimed to be owners of the land, and nobody had ever questioned their ownership.

[3] It thus appears that from the date of the conveyance by B. B. Yarborough to his son, W. H. Yarborough, Jr., on September 26, 1900, to the date upon which the suit was instituted, July 22, 1924, some 20 years had elapsed, during all of which time W. H. Yarborough and the appellees claiming through him have had and held undisputed actual possession and use of the land in controversy; that for more than 10 years of this time Peter Yarborough, through whom appellants claim, and brother of W. H. Yarborough, made no complaint whatever so far as the record shows of the conveyance to his brother W. H. Yarborough, notwithstanding the fact that notice of the conveyance must be imputed to him by the proper record of the deed at the time hereinbefore stated, nor does the record show that during this time he made any complaint of the transaction or asserted any kind of right in and to the land involved in this suit; and both under our 5 and 10 year statutes of limitation it must be held, we think, without dispute, that appellees have title, and that the court did not err in giving the peremptory instruction in their favor. Such conclusion cannot be avoided, we think, on the theory presented in the petition of the appellants that the circumstances established a trust in W. H. Yarborough to hold the legal title to Peter Yarborough's interest in the lands in controversy for his benefit and for the benefit of appellants, his legal successors.

[4] It is clear that there was no express agreement or trust on the part of W. H. Yarborough at the time he took his deed from his father, B. B. Yarborough, nor did Peter Yarborough furnish any part of the purchase money or sustain any such confidential relation to W. H. Yarborough, as, under rules of equity, will establish an implied trust. If a trust at all, it must be a trust ex maleficio, a species of constructive trust arising out of 'some fraud, misconduct, or breach of faith on the part of the persons to be charged as trustee, which renders it an equitable necessity that a trust should be implied. See Rogers v. Richards, 74 P. 255, 67 Kan. 706; Kent v. Dean, 30 So. 593, 128 Ala. 600; Barry v. Hill, 31 A. 126, 166 Pa. 344.

But, if it be conceded that the evidence is sufficient to sustain appellants' allegations of fraud on the part of B. B. and W. H. Yarborough in the making and acceptance of the deed of September 26, 1900, and hence to establish a trust ex maleficio, yet the evidence already referred to undoubtedly shows that the trust was repudiated more than 10 years before Peter Yarborough's death, and more than 20 years before the institution of this suit, during all of which time both Peter Yarborough and appellants had full notice that must be imputed to them that W. H. Yarborough and appellees were openly and adversely claiming and using the land in controversy in hostility to the trust and claim asserted in this case. So that the right of Peter Yarborough or appellees, if any ever existed, whether legal or equitable, has been lost by want of due diligence and lapse of time.

It is accordingly ordered that the judgment be affirmed.