**WEBER et ux. v. CHANEY.  (No. 7964.)**

Court of Civil Appeals of Texas.  San Antonio.
March 14, 1928.

Rehearing Denied April 18, 1928.

**1. Highways ⬅17—Evidence held to sustain finding that public use of road across defendant's premises was merely permissive in action to require reopening.**

In action to require reopening of roadway for public highway, evidence *held* to sustain jury's finding that use by public and plaintiffs of road across defendant's premises, barred by several gates, was merely permissive and not notorious and adverse, especially where general public would not be particularly benefited by opening of the road.

**2. Highways ⬅5—Permissive use by public of road through defendant's premises barred by gates held not to give public prescriptive right to road.**

Where public use of road through defendant's premises was merely permissive with defendant's consent and without assertion of any adverse claim of right as shown by maintenance of gates across road, which persons using road closed after passing through, public use did not ripen into prescriptive right so as to constitute road a public highway in suit to require its reopening as such.

Appeal from District Court, Uvalde County; L. J. Brucks, Judge.

Action by Fritz Weber and wife against J. T. Chaney.  Judgment for defendant, and plaintiffs appeal.  Affirmed.

Douglas, Carter & Black, of San Antonio, for appellants.

Ditzler H. Jones and G. B. Fenley, both of Uvalde, for appellee.

SMITH, J.  This action was brought by Fritz Weber and wife to require J. T. Chaney to reopen a roadway running through his farm in Uvalde county.  It appears that this road had been open to and indiscriminately used by the citizens of that vicinity for a period of more than ten years, but Chaney had closed it to travel in the year 1925, and, as stated, Weber and wife brought this suit to require him to reopen it to public use.  Chaney resides on his farm, in his home, which is situated by the side of the road, which enters and leaves his farm through gates maintained by him.

The jury answered "yes" to the special issue:

"Do you find from the evidence that the roadway described in plaintiffs' petition was continuously used and traveled by the public generally, whenever it saw fit, for a period of ten years or more next preceding the 16th day of December, 1925, substantially along and upon the same route on the west side of Little creek across the 244-acre tract of the defendant?"

And the jury answered "no" to the special issue:

"Do you find from the evidence that such use and travel of said road on the part of the public was open and notorious and adverse to the defendant, and without objection by him?"

In connection with the last-quoted special issue, the trial judge, upon his own motion, instructed the jury that—

"By the term 'adverse,' as used therein, is meant an actual and visible use of the road, commenced and continued under a claim of right, inconsistent with and hostile to the claim of the owner of the land across which the road runs."

And at the request of appellant the court further charged the jury as follows:

"No. 1.  In connection with the use of the word 'adverse,' as contained in the main charge, you are instructed that the same means the use of the road in question by the public under such circumstances as were reasonably calculated to put the owner upon notice that the public was using the land under a claim of right for the period of time in question, and that such use was not by license or permission.

"No. 2.  By the term 'claim of right,' as used in the main charge, is meant a use of the land in question by the public under circumstances reasonably manifesting that the public is using this road in question of its own initiative as if it owned the road and without seeking permission or consent from any one; and it is not necessary that the public should either believe or assert that it has a right to such use."

Appellants submit their appeal upon the single proposition that—

"The verdict of the jury under the second special issue, to the effect that the 10-year user by the public 'whenever it saw fit' (as found under the first special issue) was not open and adverse and without objection, is without any evidence to support it and at all events is against the great preponderance of the evidence, and the court erred in submitting said issue (as pointed out in the objections to the charge) and afterwards in not setting aside said finding (as contended for in the motion for new trial).  In this connection appellants show to the court that under the first special issue the jury found that the public used the road 'whenever it saw fit,' and the testimony of all of the witnesses is that it was used just as any other public road is used, and there is no testimony that the user was permissive or over protest or otherwise a limited user.  The public traveled the road as if it owned it according to all witnesses."

More than a score of witnesses testified to the character and extent of the use to which the road has been put during the past quarter of a century.  It was conclusively shown, and the jury found, that such of the public as had occasion to use the road did use it as fully as they would use an established highway.  Appellee himself so used it when

convenient, as did his family, tenants, and employees. So was appellee fully aware of the use made of it by the public, nor did he ever object, or express any objection, to that use. But during the entire period of its use he kept it under such restraint as the maintenance of three gates across it imposed upon it. He kept these gates closed, and the members of the public using the way usually respected that restraint by closing the gates after passing through them. The way was never formally declared or made a public road by the commissioners' court, and in 1926 that court denied the petition of appellee and others to make a public road of it. The county commissioner of the precinct embracing the road, who served as such continuously from 1910 to 1923, testified that this road was not a public road, and that he never had it worked because he had no authority to do so; that he "never heard anybody claim that to be a public road. During the time that I was commissioner nobody ever claimed that was public road, or requested me to work it." It appears to be true that the commissioners' court appointed road overseers for this road, or at least for the district embracing this road, at different times from 1898 to 1924, and that appellee himself was once such appointee. But the record warrants the implied finding that the road was never worked under these appointments, or otherwise; nor is it shown that appellee had any knowledge that such appointments were made.

[1, 2] We conclude that the evidence sustained the jury findings, and that these findings, when considered in connection with the court's instructions and definitions submitted with the issues, sustain the judgment of the court below. The evidence warrants the finding that the use made of the roadway by the public was a permissive use and enjoyed alike by the public and the owner of the servient estate and his family, employees, and tenants. The evidence further warranted the jury's finding that this user by the public was never adverse to appellee, and amounted to no adverse claim of right as against him. Such permissive use, in the absence of any adverse claim of right against the owner, could never ripen into a prescriptive right against that owner, so as to constitute the road a public highway. Benev. Soc. v. Cemetery Co. (Tex. Com. App.) 288 S. W. 812; Bauch v. Kahn (Tex. Civ. App.) 293 S. W. 259; Tolbert v. McClellan (Tex. Civ. App.) 241 S. W. 206.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant earnestly and vigorously presses his motion for rehearing, contending that if the facts shown in this case do not establish a prescriptive right in the public, then no set of facts can establish such right. This writer was much impressed with this view upon oral presentation of the cause, and has been almost persuaded thereto upon rehearing. But we have become firmly settled in the conviction, expressed in the original opinion, that when the case made is tested by the decisions of the courts of Texas, the judgment must still be affirmed. We think this is not only the law of the case, but the justice of it, as well.

It is, true, as appellant contends, that the evidence shows the roadway in controversy has been used more than 10 years by appellee and his neighbors, including appellant, without any apparent restrictions as to the character or extent of that use. Appellee never objected to such use, which was open and known to him, of course. His neighbors used the road just as he did, and with apparently just as much freedom. So far as the record shows, the question of their right to use the road, with or without his permission, acquiescence, or objection, seems never to have been raised. No one asked permission of him to use the road, he expressed no objection, had no objection, to such use, and himself used it just as his neighbors did. He put in and maintained gates where the road entered and left his farm, and his neighbors and others using the road helped him maintain this bar to absolute free passage by themselves closing the gates after using them. No one ever claimed or asserted any right to the use of the road in derogation of appellee's right to close it to public use when and if he chose to do so. The idea of adverse claim or right or user seems to have never occurred to any one except to appellee, who alone would be directly benefited by the opening of the road to public travel. The record would seem to warrant the inference that appellant alone is particularly interested in opening the road, which affords a short cut from one of his properties to another; that the general public would not be particularly benefited, and seem not to be particularly, if at all, interested in the project. There was absolutely no public user which was exclusive, or adverse or hostile in the sense that it was inconsistent with or exclusive of the individual rights of the owner. That user was not affirmatively or actively adverse or hostile to the rights of appellee, and there was nothing in the situation which would have put appellee on notice that his friendly sharing of the road with his neighbors could or would be given the effect of converting that road into a public highway. As is said in 9 R. C. L. p. 776:

"Since prescription is founded upon the supposition of a grant, the use or possession on which it is founded must be adverse, or of a nature to indicate that it is claimed as a right and not the effect of indulgence or of any compact short of a grant. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such

ownership. 'Adverse user' is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right."

And in 29 C. J. § 9, p. 377, it is said:

"Mere user of another's land by the public as for a highway is insufficient of itself to establish a highway by prescription. The user must be adverse and hostile to the rights of the owner. A user by license or permission of the owner of the land sought to be impressed with a public easement of travel is not adverse, and affords ·no basis for prescription, unless the landowner consents to the user of his land by the public as of right, in which case it is not necessary for the prescriptive term to elapse in order to vest title in the public. Permissive use has reference to the conduct of the landowner in acquiescing and consenting for the road to be traveled by the public, while adverse user imports an assertion of right, on the part of those traveling the road, hostile to that of the owner."

These rules are followed in the Texas decisions, without exception coming to our notice, and we cite these authorities in addition to those cited in the original opinion: Ramthun v. Halfman, 58 Tex. 551; Worthington v. Wade, 82 Tex. 26, 17 S. W. 520; Tolbert v. McClellan (Tex. Civ. App.) 241 S. W. 206; Smith v. Lancaster (Tex. Civ. App.) 248 S. W. 472; Williams v. Kuykendall (Tex. Civ. App.) 151 S. W. 629; Heilbron v. St. Louis S. W. Ry. Co., 52 Tex. Civ. App. 575, 113 S. W. 610, 979; Cunningham v. San Saba Co., 1 Tex. Civ. App. 480, 20 S. W. 941; Callan v. Walters (Tex. Civ. App.) 190 S. W. 829. Appellant cites only the case of Yarborough v. Tolbert (Tex. Civ. App.) 282 S. W. 302, in support of his contentions; but that case is not deemed to be in point.

Appellants' motion for rehearing must be overruled.