**KADERLI v. ZIMMERMAN et al.**
No. 2996.

Court of Civil Appeals of Texas. El Paso.
June 14, 1934.

Rehearing Denied July 5, 1934.

Frank Stubbeman, of Midland, for plaintiff in error.

Geo. W. Dunaway, of Midland, and R. W. Hamilton, of Stanton, for defendants in error.

PELPHREY, Chief Justice.

This suit involves the title to a strip of land 40 feet wide and some 264 feet long, described: "All of that strip of land in Section 22, Block 36, Township 1, South T. & P. Ry. Co. Survey, which is bounded on the North by the Texas & Pacific Ry. Co. right of way and bounded on the South by that certain tract of land conveyed to J. A. Zimmerman by deed dated March 19, 1930, and recorded in Volume 33, Pages 622–623, Deed Records of Martin County, Texas."

J. A. and J. H. Zimmerman were named as defendants. J. H. Zimmerman filed a disclaimer while J. A. Zimmerman, defendant in error here, answered by general demurrer, plea of not guilty, and a special plea of the 10-year statute of limitation.

The trial court, at the conclusion of the testimony, instructed the jury to return a verdict in favor of defendant in error and against plaintiff in error. Thereafter the court rendered judgment that Kaderli take nothing, and that the fee-simple title to the strip of land be vested in Zimmerman.

Kaderli has brought the case to this court by writ of error.

Opinion.

Plaintiff in error's brief contains the following three assignments of error:

"First Assignment of Error.

"The court erred in instructing a verdict for the defendant."

"Second Assignment of Error.

"The court erred in overruling plaintiff's motion for an instructed verdict."

"Third Assignment of Error.

"The court erred in allowing the defendant, over the objection of the plaintiff timely made, to introduce two certain deeds; namely, a deed by Mrs. Haynie conveying the tract of land in question to L. E. Graves and the deed by L. E. Graves and wife conveying the tract in question to J. A. Zimmerman."

Defendant in error's counter proposition to plaintiff in error's first assignment reads: "The undisputed evidence showing that the tract of land sued for had been held under substantial enclosure, claimed, used and occupied openly and notoriously for more than twenty years prior to the filing of this suit by the defendant in error and those through whom he claimed title, the court properly instructed the jury to find against the plaintiff for title and possession of the land."

It thus appears that the primary question to be determined is as to the sufficiency of the evidence to support the claim of defendant in error to ten years' adverse possession of the property.

T. W. Haynie, son of T. S. Haynie, testified that he had been familiar with the property from 1908 or 1909, when his father bought the property, until 1928; that the property was under fence extending to the right of way fence; that his father owned the property for nineteen or twenty years; that the fences were kept up during that time; that he never heard of any claim of a 40-foot strip; that his father kept the property rented out about 50 per cent. of the time that he owned it; that the house was built on the property when his father bought it; that G. O. Morris from whom his father purchased the property, lived on it for two years.

Sam H. Stamps testified that he had known the land for thirty years; that in 1917 there was a fence from the northeast corner of lot 1 to the railroad right of way; that he was not positive about there being a fence to the right of way on the west side at that time; that there had been a fence of some character there, to the best of his knowledge since 1917; that he could not say whether there was a fence there between August, 1919, and December, 1929.

Dick Hitson testified that he was familiar with the strip; that he had hauled hogs across it from where he lived, above the strip, during 1927 and 1928; that both ends of the strip were fenced during that time; that there was a gate in the east end fence which was up part of the time and down part of the time; that the strip was plowed up for a garden.

L. E. Graves testified that he had known the land for about 20 years; that he lived on the property in 1924 for about seven months; that

at that time the property was substantially inclosed with a fence; that he bought the property in 1928 and lived on it; that he claimed all the property to the railroad right of way; that in 1928, plaintiff in error threatened to tear out the fence on the strip, that he forbade him doing so, and he did not attempt it; that he conveyed the property to defendant in error and conveyed to him everything he had inclosed.

J. O. Gibson testified that he lived on the property in 1931; that the fence on the west end of the property connected with the right of way fence; that the fence along the east line was down but he put up a new fence where the old one had been; that the old fence had also extended to the right of way; and that nobody objected when he built the new fence.

Defendant in error testified that he was claiming the whole tract clear to the right of way; that he bought the property in the spring of 1930; that there was no fence along the south side of the 40-foot strip at that time; that he had a fence put about 45 feet south of the right of way fence; that he knew the property in 1916, 1917, 1918, 1927, and 1929; that he lived close to it from 1927 to the time he bought it; the fences on both the east and west sides of the property extended to the right of way fence at those times; and that he did not know that any vacancy existed.

In view of the fact that plaintiff in error is claiming that defendant in error's testimony shows that he was not claiming the land adversely until about four months before the case was tried, we shall here quote certain questions directed to him and his answers thereto:

"Q. You didn't know the vacancy was there until after you talked to Kaderli did you? A. No.

"Q. You actually bought, what was in the deed, didn't you, Mr. Zimmerman? A. Yes.

"Q. And you didn't claim it until after it was brought to your attention that there was a vacancy there. Isn't that true? A. Didn't claim what?

"Q. You didn't claim it until after it was brought to your attention there was a vacancy there? A. I didn't know a vacancy was there.

"Q. Up to the time you had the conversation with Mr. Kaderli, you were claiming under your deed, weren't you, from Mr. Graves? Isn't that true? A. I was claiming everything that was fenced when I bought it.

"Q. Up to the time you found that Mr. Kaderli was claiming a strip through there, you thought your deed covered the entire tract down to the railroad fence didn't you? A. Yes, sir.

"Q. And you were claiming it all under what you thought your deed covers? A. Yes, sir."

The above testimony, in the absence of any evidence to the contrary, is sufficient, we think, to establish the fact that defendant in error, and his predecessors in title, were occupying and using the strip in question for a period of more than ten years before this suit was filed, and that the trial court properly instructed a verdict in his favor.

Neither can we agree with plaintiff in error's contention that the above-quoted questions and answers show that defendant in error's claim was not hostile, and that it brings this case within the doctrine announced in Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104.

The evidence showing title in defendant in error by adverse possession, the introduction of the deeds complained of would become immaterial.

Plaintiff in error is in no position to complain of the judgment giving defendant in error affirmative relief.

The judgment is affirmed.

HIGGINS, J., did not participate in the disposition of this case.