### CROCKETT et al. v. ARKANSAS–LOUISIANA GAS CO. et al.

### No. 5364.

Court of Civil Appeals of Texas. Texarkana.

Feb. 23, 1939.

Rehearing Denied March 2, 1939.

Fred J. Dudley, of Dallas, and Joe McCasland, of Jefferson, for appellants.

Phillips, Trammell, Edwards, Estes & Orn, of Fort Worth, Abney & Caven, of Marshall, Henry C. Walker, Jr., and James B. Henderson, both of Shreveport, La., A. G. Schluter, of Jefferson, and M. L. Molhusen and S. J. Dotson, both of Longview, for appellees.

HALL, Justice.

This is an action in trespass to try title brought by appellants against appellees and involves 100 acres of land, a part of the Coy League in Marion County. All appellees answered by general denial, plea of not guilty, and specially alleged title under the several statutes of limitation. Trial was to a jury. At the conclusion of all testimony the court instructed a verdict for appellees, defendants below, and judgment was entered for them accordingly. From that judgment appellants prosecute this appeal.

Appellants' several propositions present the contention that the evidence raised issues of fact which should have been submitted to the jury: (1) As to whether there, was an outstanding deed from Charles Sharp to H. J. Harwell conveying the land in controversy; (2) whether the deed dated November 22, 1886, and recorded November 30, 1886, from Harwell

to H. T. Brooks was a forgery; and (3) respecting the claims of appellees under the several statutes of limitation.

Minor C. Crockett and Drury D. Sharp claim title to the land in controversy by inheritance from their father, Charles Sharp, as his sole heirs, and appellant Dudley claims title to an undivided interest in the land by assignment from them. Appellees claim under a deed, alleged to be lost, from Charles Sharp to H. J. Harwell, and by deed of record from H. J. Harwell to H. T. Brooks, against which an affidavit of forgery was filed by appellants; and under the five and ten year statutes of limitation. It is undisputed that Harwell went into possession of this land about 1884, built a house thereon, cultivated and used the land until 1886. It is further undisputed that H. T. Brooks took possession of said land about 1886 and continued in possession of same until his death in 1906, and his widow continued in possession thereof until her death in 1910. Thereafter this land, together with the remainder of the Brooks estate, was held by the heirs of H. T. Brooks and wife until it was partitioned among them in 1916. The tract in controversy here was awarded to Dr. C. H. Brooks who on November 15, 1919, conveyed it to Isaac Crawford, one of the appellees. On the same day, November 15, 1919, Isaac Crawford conveyed the east one-half of this land to Jimmie Bennett. Both the Crawford and the Bennett deeds were recorded in the Deed Records of Marion County on December 5, 1919. Isaac Crawford and Jimmie Bennett are now in possession of the land in controversy, and the other appellees hold the leasehold estate and mineral interests under them.

We shall discuss first the question whether the deed dated November 22, 1886, and recorded November 30, 1886, from Harwell to Brooks, was shown to be a forgery and effective to prevent the application of R.C.S. Article 5509, commonly known as the five year limitation statute. Or, stated another way, was there sufficient evidence introduced with respect to the question of forgery of this deed to warrant the submission of such issue to the jury? The deed in question had been of record in Marion County for fifty years when its genuineness was first questioned. It was in proper form and acknowledged according to law. Evidence was admitted, which was not contradicted, that both grantee Brooks and the officer who took the acknowledgments of Harwell and his wife bore a good reputation for honesty and fair dealing. Joe Brooks, witness for appellees, also testified that he was present when Harwell approached his father, H. T. Brooks, to sell him the land in controversy. His testimony in this respect was:

"Q. You spoke of your father buying some land from Henry Harwell. What land did he buy? Was that the Crawford and Bennett tract? A. He bought a hundred acre block, and Crawford and Bennett own it now.

"Q. Tell the jury in your own words what you remember about that transaction of your father buying the land from Henry Harwell. A. Well, Mr. Harwell was wanting to move out of down in that part of the country, and he came to my father and asked him if—

"Q. Were you there when Mr. Harwell came to your father? A. Yes, I was on the gin-yard there.

"Q. Your father was there at the gin? A. Yes, and he came up there and asked my father—

"Q. Who came? A. Mr. Harwell; and he wanted to sell this hundred acres to him.

"Q. Was there any one with him? A. When he first came there, there was no one with him, but later he went back and came again and Mr. Sharp was with him. He brought Mr. Sharp with him, and he was just a young man; Mr. Charley Sharp was.

"Q. Go ahead and tell what happened. A. Well, they talked and I couldn't tell you what all they said at the time, but anyway they talked this matter over, and my father told him, 'Just fix up the deeds and papers and I will buy it,' and so they went on then, and my father and these two men went over to the Justice of the Peace, and I don't know what took place over there. Sharp and Mr. Harwell and my father all went off together, and were gone quite a while, and my father told me at the time, he said—

"The Court: Was it after they came back from the Justice of the Peace's office or before they went? A. It was before they went. They went right on over there, and after he came back from the Justice of the Peace my father said, 'Well, I bought me a piece of land.'

"Q. Was Mr. Sharp there when your father said that? A. Yes.

"Q. Was Mr. Harwell there? A. Yes.

"Q. You didn't go with them? A. No.

"Q. And Mr. Harwell and Mr. Charley Sharp and H. T. Brooks, your father, all went over to the Justice of the Peace? A. Yes.

"Q. What Justice of the Peace was that? A. John M. Taylor."

This testimony was uncontradicted. Harwell and his wife both testified, Mrs. Harwell stating that she signed the instrument but that the initial "F" in her signature was not written by her. When asked about her husband's signature in the deed, she testified: "Q. Does that or not, appear to be Mr. Harwell's signature? A. Well, it doesn't look much like it, but I wouldn't be right sure."

She testified further that she had no recollection of appearing before the officer taking her acknowledgment. H. J. Harwell testified that he sold the land to H. T. Brooks in 1886, but he had no recollection about the deed in question. When interrogated about his signature he testified:

"Q. I hand you Exhibit 'a', Mr. Harwell, which purports to be a deed from Henry J. Harwell and Era F. Harwell, his wife, to H. T. Brooks covering 100 acres of land in Santos Coy Survey of Marion County, Texas, dated November 22, 1886. I will ask you to examine said deed and state whether or not that is your signature. (An interruption).

"Q. Examine the instrument all over, Mr. Harwell. A. That is not the way I sign my name at all. I don't know who wrote that but I didn't—who wrote that?

"Q. Could you swear, Mr. Harwell, that you did not sign the deed? A. I wouldn't swear positively, but I never did sign my name like that in my life.

"Q. You will not swear positively that it is not your signature? A. I don't make my 'H' like that—I never in my life made an 'H' like that—I always make it like this (pointing and indicating) down this way. That don't look like my signature at all.

"Q. Examine it carefully. A. I can see it good, it don't look like my writing.

"Q. State whether or not you can swear that it is not. A. I wouldn't want to swear to it neither way, it don't look like it—may be—but I wouldn't swear to it—that is not like I write it."

The testimony of this witness when summed up, in our opinion, means simply that he does not remember the transaction. At the time his testimony was given he was seventy-nine years old and the transaction inquired about occurred fifty years before. Mrs. Harwell was likewise aged. She testified that she and Mr. Harwell had been married fifty-three years at the time her deposition was taken. Naturally, their minds on account of the accumulation of events covering fifty years of their life would be unable with any degree of certainty to recall this isolated transaction. As said in Todd v. Hand, Tex.Civ.App., 225 S.W. 770, 772, writ refused, by the late Chief Justice Conner, in discussing evidence very similar to that of Harwell and his wife relative to a forged deed: "The evidence further shows that Mrs. Todd was 80 years of age, and it is therefore not improbable that she had forgotten all about the transaction." The affidavit of forgery lodged against this deed by appellants was no evidence of the fact of forgery. Todd v. Hand, supra; Cox v. Cock, 59 Tex. 521. This deed without any proof of its execution was admissible in evidence. This, because it was regular in every respect and had been executed and properly recorded for fifty years. McWhirter v. Allen, 1 Tex.Civ.App. 649, 20 S.W. 1007, writ refused; Crosby v. Ardoin, Tex.Civ. App., 145 S.W. 709, writ refused; Carter v. Green, Tex.Civ.App., 64 S.W.2d 1069, writ refused. However, as shown above, the appellees went further and established, by uncontradicted evidence, the good character of the grantee Brooks and the notary, both of whom were dead at the date of the trial. And appellees also established by uncontradicted evidence the sale of the land by Harwell to Brooks. It is our opinion that the evidence respecting the execution of the deed from Harwell and wife to Brooks did not raise an issue of fact as to its genuineness to be submitted to the jury. It constituted no impediment to appellees' claim of title under the five year statute of limitation, even though it became necessary for appellees to deraign title through said deed. Cox v. Cock, supra; Todd v. Hand, supra; Carter v. Green, supra.

We shall next consider the question of limitation under the five and ten

year statutes (R.C.S. Arts. 5509 and 5510) relied upon by appellees. It may be assumed in this investigation that the evidence conclusively established as a fact that about 1881 Charles Sharp became the owner of the land in controversy, and that Mrs. Minor Crockett and Drury D. Sharp were the sole heirs of Charles Sharp, deceased. Still, the appellees would be entitled to recover this land if the uncontroverted evidence showed that they had met all the requirements of either the five or the ten year statutes of limitation. The uncontradicted evidence showed that Isaac Crawford purchased the land November 15, 1919, from Dr. C. H. Brooks, and placed his deed of record December 5, 1919. On the same day Crawford purchased, he conveyed the east half of said land to Jimmie Bennett, and Bennett placed his deed of record December 5, 1919. The evidence is without dispute that Jimmie Bennett moved upon the east half, made improvements, cultivated, used and enjoyed the same, and claimed the land under a deed duly registered, paid taxes thereon before delinquency from and including 1920 to and including 1929, and that he has had and held peaceable and adverse possession of said land until interrupted by the filing of this suit on June 15, 1936. Isaac Crawford did not reside on his half of the land, but the facts are undisputed that he paid taxes thereon before delinquency from 1923 to 1927, both years inclusive, under a deed duly registered; that he cultivated, used and enjoyed said land, and has had and held peaceable and adverse possession thereof until interrupted by the filing of this suit on June 15, 1936. Crawford's and Bennett's claims of limitation under both the five and the ten year statutes of limitation were established by their own testimony, together with that of six of their neighbors. And as we understand this record, this testimony is in no wise contradicted. No claim to this property was asserted by appellants until this suit was filed. There is no evidence in the record that their father, Charles Sharp, ever made any claim to this property or paid taxes thereon from 1886 to 1898, the date of his death. His administrator testified that he knew nothing about the property and did not list it in his inventory. We understand the rule to be that the trial court is justified in giving a peremptory instruction when the evidence is so conclusive that reasonable minds can not differ thereon. Sigmond Rothchild Co. v. Moore, Tex.Com.App., 37 S.W.2d 121, opinion adopted by Supreme Court. When the evidence in this record bearing upon limitation under the five and ten year statutes as claimed by Crawford and Bennett and those holding under them is measured by the rule set out next above, we see no escape from the conclusion that the trial court was correct in directing a verdict for appellees. Elliott v. Wallace, Tex.Com.App., 59 S. W.2d 109; Yarborough v. Tolbert, Tex. Civ.App., 282 S.W. 302; Kaderli v. Zimmerman, Tex.Civ.App., 72 S.W.2d 964. It is our conclusion that the uncontroverted evidence in this record shows title to this land in Isaac Crawford and Jimmie Bennett and those holding interests under them, under both the five and the ten year statutes of limitation. This conclusion renders a discussion of other propositions advanced by appellants unnecessary.

The judgment is affirmed.